**UNITED STATES of America, Plaintiff,**

v.

**William James GALLENARDO, Defendant.**

**No. CR 07–04–BU–DWM.**

United States District Court, D. Montana, Butte Division.

May 31, 2007.

Marcia Hurd, U.S. Attorneys Office, Billings, MT, for Plaintiff.

Wendy Holton, Holton Law Firm, Helena, MT, for Defendant.

## ORDER

DONALD W. MOLLOY, Chief Judge.

### I. Introduction

Defendant William James Gallenardo moves the Court to dismiss the indictment in the above-captioned matter. Gallenardo was charged in a three-count indictment with sexual exploitation of children, in violation of 18 U.S.C. § 2251(a); possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B); and a related forfeiture count. Gallenardo contends his prosecution for these crimes constitutes an unconstitutional exercise of Congress' Commerce Clause power. In light of the Supreme Court's recent decision in *Gonzales v. Raich*, 545 U.S. 1, 125 S.Ct. 2195,

162 L.Ed.2d 1 (2005), I find Gallenardo's argument unpersuasive. Because Gallenardo's conduct substantially affects interstate commerce, it may be regulated by Congress.

## II. Analysis

Section 2251 (a) provides:

Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed.

18 U.S.C. 2251(a). Section 2252A(a)(5)(B) criminalizes the possession of material containing an image of child pornography under circumstances identical to those set forth in section 2251(a). Gallenardo was charged with enticing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct and possession of material containing images of child pornography. The child pornography Gallenardo produced and possessed was not transported in interstate commerce or mailed. Instead, the "jurisdictional hook" that brings Gallenardo's conduct within the ambit of the statutes is the fact that the child pornography was produced using materials that were mailed, shipped, or transported in interstate commerce. Relying on *United States v. McCoy*, 323 F.3d 1114 (9th Cir. 2003), Gallenardo contends this interstate connection is insufficient to permit regulation pursuant to the Commerce Clause.

The defendant in *McCoy* was charged with possession of child pornography based on her possession of a single photograph of herself and her ten-year-old daughter partially unclothed, posing side by side, with their genital areas exposed. *Id.* at 1115. The defendant possessed the photograph for her own personal use, with no intention of distributing it in interstate commerce. *Id.* The camera and film used to take the photograph, however, were manufactured outside of the defendant's state of residence, bringing the defendant's conduct within the confines of the child pornography statute. *Id.* at 1117. The court applied the fourpart inquiry set forth in *United States v. Morrison*, 529 U.S. 598, 610–12, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000), for determining whether an intrastate activity substantially affects commerce and concluded prosecution of the defendant violated the Commerce Clause. *McCoy*, 323 F.3d at 1119 (observing the relevant considerations include "(1) whether the statute in question regulates commerce or any sort of economic enterprise; (2) whether the statute contains any express jurisdictional element which might limit its reach to a discrete set of cases; (3) whether the statute or its legislative history contains express congressional findings that the regulated activity affects interstate commerce; and (4) whether the link between the regulated activity and a substantial effect on interstate commerce is attenuated" (quotations omitted)). In so doing, the court distinguished *Wickard v. Filburn*, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942). In *Wickard*, the Su-

preme Court concluded the Commerce Clause permits Congress to regulate wheat produced solely for a farmer's personal use. *Id.* The Court determined the farmer's production of wheat affects interstate commerce because "it supplies a need of the man who grew it which would otherwise be reflected by purchases in the open market. Home-grown wheat in this sense competes with wheat in commerce." *Id.* at 128, 63 S.Ct. 82. In distinguishing *Wickard,* the *McCoy* court observed that recent Supreme Court cases had limited the reach of *Wickard* to activity the commercial or economic character of which is apparent. *McCoy,* 323 F.3d at 1120(citing *United States v. Lopez,* 514 U.S. 549, 558, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), and *Morrison,* 529 U.S. at 611 n. 4, 120 S.Ct. 1740). The court determined simple intrastate possession of home-grown child pornography not intended for distribution or exchange is not economic activity, and thus, the reasoning of *Wickard* was not applicable. Gallenardo urges the Court to adopt the reasoning in *McCoy* and conclude Gallenardo's conduct, which involved the production and possession of child pornography that was not transported in interstate commerce or mailed, does not substantially affect interstate commerce and thus cannot be regulated by Congress under the Commerce Clause.

After the Ninth Circuit handed down its decision in *McCoy,* the Supreme Court decided *Gonzales v. Raich,* 545 U.S. 1, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005). In *Raich,* the Supreme Court reversed a Ninth Circuit decision holding the federal Controlled Substances Act ("CSA") unconstitutional as applied to the intrastate manufacture and possession of marijuana for medical purposes. 545 U.S. at 9, 125 S.Ct. 2195. In doing so, the Court relied heavily on *Wickard.* According to the Court,

*Wickard* ... establishes that Congress can regulate purely intrastate activity that is not itself "commercial," in that it is not produced for sale, if it concludes that failure to regulate that class of activity would undercut the regulation of the interstate market in that commodity. The similarities between this case and *Wickard* are striking. Like the farmer in *Wickard,* respondents are cultivating, for home consumption, a fungible commodity for which there is an established, albeit illegal, interstate market. Just as the Agricultural Adjustment Act was designed "to control the volume [of wheat] moving in interstate and foreign commerce in order to avoid surpluses ..." and consequently control the market price, a primary purpose of the CSA is to control the supply and demand of controlled substances in both lawful and unlawful drug markets. In *Wickard,* we had no difficulty concluding that Congress had a rational basis for believing that, when viewed in the aggregate, leaving home-consumed wheat outside the regulatory scheme would have a substantial influence on price and market conditions.... Given the enforcement difficulties that attend distinguishing between marijuana cultivated locally and marijuana grown elsewhere, and concerns about diversion into illicit channels, we have no difficulty concluding that Congress had a rational basis for believing that failure to regulate the intrastate manufacture and possession of marijuana would leave a gaping hole in the CSA.

*Id.* at 18–19, 22, 125 S.Ct. 2195(citations omitted). The Court also distinguished *Lopez* and *Morrison.* It noted those cases dealt with non-economic activities, namely the possession of a gun in a school zone and gender-motivated crimes of violence. *Id.* at 23–25, 125 S.Ct. 2195. Although the respondents in *Raich* did not intend to sell

the marijuana they produced for medicinal purposes, the Court determined the activities regulated by the CSA-the production, distribution, and consumption of narcotics-were nevertheless economic. *Id.* at 25, 125 S.Ct. 2195. The Court observed there is an established, and lucrative, interstate market for controlled substances and prohibiting the intrastate possession or manufacture of controlled substances is a rational means of regulating that product. *Id.* at 26, 125 S.Ct. 2195.

The Supreme Court's decision in *Raich* effectively overrules the Ninth Circuit's decision in *McCoy.* If home-grown marijuana produced for purely personal use can be regulated by Congress as part of a larger scheme to control the interstate market for controlled substances, then Congress can regulate so-called home-grown child pornography produced for purely personal use in an effort to control the interstate marketing of child pornography. In fact, each of the Courts of Appeals to address this issue since *Raich* was decided have concluded Congress may criminalize the production or possession of child pornography that was made using materials that were mailed, shipped, or transported in interstate commerce, even if the pornography itself was not transported in interstate commerce or mailed.

In *United States v. Forrest,* 429 F.3d 73, 78(4th Cir.2005), for example, the Fourth Circuit concluded *Raich* supports federal jurisdiction over intrastate offenses involving child pornography that was produced using materials that had traveled in interstate commerce. The defendant in *Forrest* challenged his conviction for sexual exploitation of a child. *Id.* at 75. The defendant was the chief of police in Maryland and met his victim through his department's Junior Police Program. *Id.* at 76. The defendant took sexually explicit photographs of the child for his personal use. *Id.*

The camera the defendant used to take the photographs was manufactured outside the defendant's state of residence. *Id.* The Fourth Circuit applied the Supreme Court's reasoning in *Raich* to uphold the defendant's conviction. It stated:

> The case at hand is strikingly similar to *Raich.* In both, Congress exercised its Commerce Clause authority to regulate "quintessentially economic" activities, i.e., those involving the "production, distribution, and consumption of commodities." True, the regulated commodities differ; in *Raich,* the commodity was marijuana, here it is child pornography. But that distinction is immaterial. In both statutes Congress "directly" regulated economic activity in a "fungible commodity," by, *inter alia,* prohibiting its possession.
>
> Moreover, in both instances Congress had a rational basis for concluding that prohibition of mere local possession of the commodity was essential to the regulation of "an established, albeit illegal, interstate market." Just as Congress rationally concluded that demand might draw homegrown marijuana into interstate markets, thereby "frustrat[ing] the federal interest in eliminating commercial transactions in the interstate market in their entirety," so too might Congress rationally fear that homemade child pornography would find its way into interstate commerce. Indeed, this concern is especially salient in the context of child pornography, because much of the material traded on that interstate market is homemade.
>
> Furthermore, although Congress need not make findings as to the effect of local activities on the interstate market before it regulates, it did so in enacting both the CSA and the statutes at issue here.

*Id.* at 78–79 (citations omitted). The Court also observed that "the Supreme Court itself has suggested that *Raich*

**1176**

bears directly on the question at hand by vacating and remanding in light of *Raich* two cases sustaining Commerce Clause challenges to [the] child exploitation statutes." *Id.* at 79 n. 2. The Sixth, Eighth, Tenth, and Eleventh circuits have issued similar rulings. *See United States v. Maxwell,* 446 F.3d 1210, 1214–19 (11th Cir. 2006) (relying on *Raich* to uphold conviction for child pornography offense against Commerce Clause challenge where materials transported in interstate commerce were used to produce child pornography but the defendant had no intention of transmitting the images interstate); *United States v. Mugan,* 441 F.3d 622, 627–30 (8th Cir.2006) (same); *United States v. Chambers,* 441 F.3d 438, 454–55 (6th Cir. 2006) (same); *United States v. Jeronimo–Bautista,* 425 F.3d 1266, 1273 (10th Cir. 2005) (same). In light of the Supreme Court's decision in *Raich,* and the rulings of our sister circuits applying *Raich* to facts similar to those present in the instant case, this Court can no longer rely on *McCoy's* holding. The application of child pornography statutes to persons who produce or possess child pornography made using materials transported in interstate commerce is a valid exercise of Congress' power under the Commerce Clause. Gallenardo's production and possession of images of child pornography substantially affects interstate commerce regardless of the fact that he did not, or did not intend to, transmit the images across state lines.

### III. Conclusion

Accordingly, IT IS HEREBY ORDERED that Gallenardo's Motion to Dismiss Indictment (dkt # 15) is DENIED.

IT IS FURTHER ORDERED that the plea agreement deadline is extended to June 4, 2007.