**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  v.

GEOFFREY DAVID MCCALLA,
  *Defendant-Appellant.*

No. 07-50162

D.C. No.
CR-06-00384-DSF-1

OPINION

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Submitted July 15, 2008*
Pasadena, California

Filed September 24, 2008

Before: Barry G. Silverman, Johnnie B. Rawlinson, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Rawlinson

---

*This panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

13587

## COUNSEL

Shannon M. Dorvall, Santa Monica, California, on behalf of defendant-appellant Geoffrey David McCalla.

Thomas P. O'Brien, Christine C. Ewell, Rupa S. Goswami, Los Angeles, California, on behalf of plaintiff-appellee United States of America.

**OPINION**

RAWLINSON, Circuit Judge:

Appellant Geoffrey David McCalla (McCalla) was charged in a two-count indictment with producing and possessing child pornography in violation of federal statutes. McCalla filed two motions to dismiss the indictment for lack of jurisdiction and the district court denied both. McCalla pled guilty to Count One charging production of child pornography, conditioned only upon his ability to appeal the denial by the district court of his motion to dismiss under the Commerce Clause. On appeal, McCalla argues lack of federal jurisdiction under the Commerce Clause and lack of federal territorial jurisdiction under 18 U.S.C. § 7. We have jurisdiction under 28 U.S.C. § 1291, and we affirm the district court's rulings on both motions to dismiss.

## I.  BACKGROUND

In December, 2005, John B. Kuzma (Kuzma), Special Agent with the Department of Homeland Security (DHS), United States Immigration and Customs Enforcement (ICE), began investigating McCalla's possible use of a child pornography website. In the course of his investigation, Kuzma learned that McCalla had been arrested by the Los Angeles Police Department (LAPD) after a witness reported discovering images in McCalla's house depicting child pornography.

The images showed the witness's step-daughter (Child Victim 1), who appeared to be approximately five years old, as well as other children, engaging in sexually explicit conduct. In addition to these images, numerous other images depicting child pornography were retrieved from materials seized during a search of McCalla's residence and place of employment. Approximately 4,235 suspected child pornography images were recovered from standard file directories in McCalla's

work computer's hard drive. Approximately 50 suspected child pornography movie files were also recovered.

Following his arrest and the discovery of these images, a federal grand jury returned a two-count indictment against McCalla. Count One charged McCalla with the production of child pornography in violation of 18 U.S.C. § 2251(a), (e). Count Two charged McCalla with possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). *Id.* at 13. Both counts included the jurisdictional requirement that the child pornography produced or possessed by McCalla was "produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce by any means, including by computer . . . "

McCalla filed two motions to dismiss the indictment. In the first motion, McCalla argued lack of subject matter jurisdiction, specifically contending that the Commerce Clause did not grant Congress authority to regulate local production of child pornography. The district court rejected this argument, noting that in light of the Supreme Court's decision in *Gonzales v. Raich*, 545 U.S. 1, (2005), regardless of prior Ninth Circuit rulings, "the Ninth Circuit would now take the position that this statute was valid."

McCalla filed a subsequent motion to dismiss, arguing the absence of federal territorial jurisdiction because the events did not occur within the exclusive territory of the United States. The district court also denied this second motion.

Thereafter, McCalla entered into a conditional plea agreement with the government whereby he pled guilty to Count 1 of the indictment (production of child pornography). The plea agreement was conditioned upon McCalla's reservation of the right to seek appellate review of the district court's denial of the motion to dismiss "filed on or about August 11, 2006 [the Commerce Clause argument]."

In the plea agreement, the parties stipulated to several facts, including:

- Beginning in or around January, 2003, and continuing to in or about September, 2004, McCalla took approximately 45 sexually explicit photographs of Child Victim 1.

- McCalla produced the pornographic images of this child using materials that had been mailed, shipped, or transported in interstate or foreign commerce. In particular, McCalla used a Sony digital camera that had been manufactured in Japan and transported in interstate and foreign commerce to California.

- Two compact discs containing child pornography that McCalla kept and used at home contained child pornographic images of Child Victim 1.

- Three compact discs containing child pornography that McCalla kept and used at work contained child pornographic images of Child Victim 1.

The district court accepted the guilty plea, and sentenced McCalla to 210 months' imprisonment followed by a lifetime of supervised release. McCalla timely appealed.

## II.   STANDARD OF REVIEW

"We review a district court's denial of a motion to dismiss an indictment on constitutional grounds *de novo*." *United States v. Latu*, 479 F.3d 1153, 1155 (9th Cir. 2007) (citation omitted).

### III.  DISCUSSION

## A.  Commerce Clause Challenge

McCalla argues that Congress lacks authority under the Commerce Clause to regulate the noncommercial and wholly intrastate production of child pornography, and therefore, as applied to him, 18 U.S.C. § 2251(a) is unconstitutional.

McCalla makes two main arguments in support of his claim. First, McCalla argues that the Supreme Court's most recent decision discussing the Commerce Clause, *Gonzales v. Raich*, 545 U.S. 1 (2005), was wrongly decided and applies an incorrect legal standard of review. Second, McCalla argues that analyzing Section 2251(a) utilizing the factors articulated by the Supreme Court in *United States v. Morrison*, 529 U.S. 598 (2000), reveals the statute's unconstitutionality.

To the extent McCalla premises his argument on an invitation to set aside or disregard United States Supreme Court precedent, we simply cannot accommodate him. As the Supreme Court has expressly stated, "it is this Court's prerogative alone to overrule one of its precedents." *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997). Accordingly, in determining whether prosecution of the intrastate production of child pornography is authorized under the Commerce Clause, we are bound by the Supreme Court's decision in *Raich*.

*Raich* addressed the question of whether the Controlled Substances Act (CSA) was unconstitutional as applied to purely intrastate producers of marijuana for medical purposes under California's Compassionate Use Act. 545 U.S. at 5. The Supreme Court reiterated that there are three general categories of activity that Congress's commerce power gives it the authority to regulate. "First, Congress can regulate the channels of interstate commerce. Second, Congress has authority to regulate and protect the instrumentalities of interstate commerce, and persons or things in interstate commerce. Third,

Congress has the power to regulate activities that substantially affect interstate commerce." *Id.* at 16-17 (citations omitted). It is this third category that was implicated in *Raich*, *see id.* at 17, and which also is at issue in this case.

**[1]** The Supreme Court ultimately held that the application of CSA provisions criminalizing the intrastate manufacture, distribution or possession of marijuana did not violate the Commerce Clause. *Id.* at 9. In reaching this holding, the *Raich* court established several important principles that guide our decision. First, the Court reiterated that "[i]n assessing the scope of Congress' authority under the Commerce Clause, . . . the task before [the Court] is a modest one. [The Court] need not determine whether respondent[ ]'s activities, taken in the aggregate, substantially affect interstate commerce in fact, *but only whether a 'rational basis' exists for so concluding.*" *Id.* at 22, citing *United States v. Lopez*, 514 U.S. 549, 557 (1995) (emphasis added) (parallel citation omitted).

**[2]** In *Raich*, the Court reasoned that "[g]iven the enforcement difficulties that attend distinguishing between marijuana cultivated locally and marijuana grown elsewhere . . . , and concerns about diversion into illicit channels, we have no difficulty concluding that Congress had a rational basis for believing that failure to regulate the intrastate manufacture and possession of marijuana would leave a gaping hole in the CSA." *Id.* (citation and footnote reference omitted). The *Raich* court also noted "[t]hat the regulation ensnares some purely intrastate activity is of no moment. As we have done many times before, we refuse to excise individual components of that larger scheme." *Id.* In reaching its holding that application of the CSA to purely intrastate production of marijuana was within Congress' authority under the Commerce Clause, the Supreme Court distinguished the CSA from those statutes that it struck as unconstitutional in *Lopez* (holding that the Gun-Free School Zones Act was an invalid exercise of Congress' Commerce Clause authority) and *Morrison* (striking the Violence Against Women Act). The Court distinguished

*Raich* from *Lopez* and *Morrison* in part based on the fact that in those cases, the statutes in question had no connection to commerce or economic enterprise. *Raich*, 545 U.S. at 23-25. In contrast, the CSA is "a comprehensive framework for regulating the production, distribution, and possession of five classes of 'controlled substances' " most of which "have a useful and legitimate medical purpose . . ." *Id.* at 24. "The regulatory scheme is designed to foster the beneficial use of those medications, to prevent their misuse, and to prohibit entirely the possession or use of substances listed in Schedule I, except as a part of a strictly controlled research project." *Id.*

The Supreme Court emphasized that "[u]nlike those at issue in *Lopez* and *Morrison*, the activities regulated by the CSA are quintessentially economic. 'Economics' refers to 'the production, distribution, and consumption of commodities.' " *Id.* at 25 (citation omitted). The court noted that "[p]rohibiting the intrastate possession or manufacture of an article of commerce is a rational (and commonly utilized) means of regulating commerce in that product." *Id.* at 26 (footnote reference omitted). The Court concluded that "[b]ecause the CSA is a statute that directly regulates economic, commercial activity, our opinion in *Morrison* casts no doubt on its constitutionality." *Id.*

In reaching this conclusion, the *Raich* Court rejected the appellants' argument that the cultivation of homegrown medical marijuana represented a " 'separate and distinct' class of activities . . . beyond the reach of federal power." *Id.* The Court determined that not only was this purported class not exempt from inclusion in the CSA, but it was "an essential part of the larger regulatory scheme." *Id.* at 26-27.

**[3]** The Supreme Court's reasoning in *Raich* supports a conclusion that the challenged statute in this case is not unconstitutional because it criminalizes the production of "homegrown" child pornography. Here, as in *Raich*, the statute is comprehensive in that it seeks to regulate (more accu-

rately, exterminate) the entire child pornography market (similar to at least one category of the CSA — marijuana). *See United States v. Maxwell*, 446 F.3d 1210, 1217 n.7 (11th Cir. 2006). Moreover, as in *Raich*, the statute addresses a commodity — child pornography — which, Congress found, "[has] become [a] highly organized, multimillion dollar industr[y] that operate[s] on a nationwide scale." S. Rep. No. 95-438, at 5 (1977), *reprinted in* 1978 U.S.C.C.A.N. 40, 42, 1977 WL 9660.

[4] Following the reasoning in *Raich*, the task before us then is to determine "whether Congress could rationally conclude that the cumulative effect of the conduct by [McCalla] and his ilk would substantially affect interstate commerce — specifically the interstate commerce Congress is seeking to eliminate." *Maxwell*, 446 F.3d at 1218. As the Eleventh Circuit in *Maxwell* concluded, "[v]iewed in this light, there is nothing irrational about Congress's conclusion, supported by its findings, that pornography begets pornography, regardless of its origin." *Id.*

Other circuits considering this issue post-*Raich* have agreed. The Fourth Circuit noted that "[j]ust as Congress rationally concluded that demand might draw homegrown marijuana into interstate markets, thereby 'frustrating the federal interest in eliminating commercial transactions in the interstate market in their entirety,' so too might Congress rationally fear that homemade child pornography would find its way into interstate commerce." *United States v. Forrest*, 429 F.3d 73, 78 (4th Cir. 2005), quoting *Raich*, 545 U.S. at 19 (alteration omitted); *see also United States v. Chambers*, 441 F.3d 438, 442, 454-55 (6th Cir. 2006) (rejecting an as-applied challenge to § 2252, prohibiting transportation of child pornography); *United States v. Blum*, 534 F.3d 608, 609, 611 (7th Cir. 2008) (upholding § 2251, noting that "Congress in enacting [§ 2251] recognized the danger posed by any child pornography regardless of origin . . ."); *United States v. Mugan*, 441 F.3d 622, 629-30 (8th Cir. 2006) (reaching same

conclusion without citing *Raich*); *United States v. Jeronimo-Bautista*, 425 F.3d 1266, 1272-73 (10th Cir. 2005) (upholding constitutionality of § 2251 as applied to purely intrastate production); *United States v. Sullivan*, 451 F.3d 884, 890 (D.C. Cir. 2006) (upholding constitutionality of child pornography possession statute).

[5] Given Congress's broad interest in preventing sexual exploitation of children, it is eminently rational that Congress would seek to regulate intrastate production of pornography even where there is no evidence that it was created for commercial purposes. *See United States v. Ortiz-Graulau*, 526 F.3d 16, 19 (1st Cir. 2008) ("preventing exploitation of children could be aided by the statute's broad ban on taking such photographs even for private use") (citation omitted). Indeed, in enacting the Child Pornography Prevention Act, Congress specifically expressed the idea echoed by the 11th Circuit in *Maxwell* that child pornography begets more child pornography regardless of its origin: "the existence of and traffic in child pornographic images . . . inflames the desires of child molesters, pedophiles, and child pornographers who prey on children, thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials . . ." Pub. L. No. 104-208, § 121, 1996 HR 3610, 110 Stat. at 3009-27.

[6] Because it is rational to conclude that homegrown child pornography affects interstate commerce, we "need not inquire into the specifics of [McCalla's] possession: when a general regulatory statute bears a substantial relation to commerce, the *de minimis* character of individual instances arising under that statute is of no consequence." *United States v. Stewart*, 451 F.3d 1071, 1078 (9th Cir. 2006) (citation, alteration and internal quotation marks omitted).

McCalla's reliance on our decision in *United States v. McCoy*, 323 F.3d 1114, 1117 (9th Cir. 2003), a case in which

we found unconstitutional the application of § 2252 to a mother who possessed a single photograph in which she and her child appeared partially nude, is misplaced. *McCoy* involved possession of child pornography, rather than its production. Moreover, to the extent the reasoning employed in *McCoy* relied on the local nature of the activity, it has been overruled by the Supreme Court's decision in *Raich*. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003), en banc ("We hold that the issues decided by the higher court need not be identical in order to be controlling. Rather, the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable.").

**[7]** Because McCalla's Commerce Clause arguments are unavailing, we affirm the district court's denial of McCalla's motion to dismiss on this basis.

## B.   Territorial Jurisdiction

**[8]** Citing 18 U.S.C. § 7, McCalla raises the argument that federal courts are without jurisdiction over matters that do not occur exclusively in federal territory. This argument is wholly without merit. The federal court's jurisdiction is not limited to federal crimes committed on federal lands. Pursuant to 18 U.S.C. § 3231, "[t]he district courts of the United States have original jurisdiction, exclusive of the courts of the States, of *all* offenses against the laws of the United States." (Emphasis added). *See also United States v. Begay*, 42 F.3d 486, 499 (9th Cir. 1994) (holding that where situs is not an element of the offense, federal criminal statutes apply "equally to everyone everywhere within the United States").

## IV.   CONCLUSION

Regulation of intrastate production of child pornography within the context of eliminating the national child pornography industry is a valid exercise of Congress's authority under

the Commerce Clause. Application of this statute to McCalla was not unconstitutional. Jurisdiction to enforce § 2251(a) is not limited to federal enclaves as argued by McCalla. Accordingly, we uphold the district court's denials of both motions to dismiss the indictment.

**AFFIRMED.**