**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee,*

v.

WILLIAM JAMES GALLENARDO,
   *Defendant-Appellant.*

No. 07-30414

D.C. No.
CR-07-00004-DWM

OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, Chief District Judge, Presiding

Argued and Submitted
February 2, 2009—Portland, Oregon

Filed August 28, 2009

Before: Richard A. Paez and Johnnie B. Rawlinson, Circuit
Judges, and Bruce S. Jenkins,* District Judge.

Opinion by Judge Rawlinson

---

*The Honorable Bruce S. Jenkins, Senior United States District Judge
for the District of Utah, sitting by designation.

12031

## COUNSEL

Wendy Holton, Helena, Montana, for appellant William Gallenardo.

Marcia Hurd, Assistant U.S. Attorney, Billings, Montana, for appellee United States.

## OPINION

RAWLINSON, Circuit Judge:

Appellant William Gallenardo (Gallenardo) was convicted of sexual exploitation of a child and possession of child pornography. Gallenardo contends that the district court erred in denying his motion to dismiss the indictment because his intrastate possession of child pornography cannot serve as the requisite interstate commerce nexus for federal jurisdiction.

Additionally, Gallenardo challenges the district court's denial of his motion for a mistrial on the basis of allowing the

jury to hear an audiotape that mentioned other sexual allegations against Gallenardo.

Gallenardo also contends that the district court erred in imposing a mandatory life sentence pursuant to 18 U.S.C. § 3559(e). Gallenardo posits that 18 U.S.C. § 3559(e) was inapplicable, as 18 U.S.C. § 2251(e) provides the appropriate recidivist penalty. Gallenardo maintains that his prior Montana conviction for sexual assault cannot serve as the requisite predicate offense for 18 U.S.C. § 3559(e) because it did not involve interstate conduct.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm the district court's judgment.

## I.   BACKGROUND

Gallenardo was indicted for sexual exploitation of a child in violation of 18 U.S.C. § 2251(a); possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(b); and a related forfeiture count.

The district court denied Gallenardo's motion to dismiss the indictment premised on Gallenardo's argument that his intrastate possession of child pornography was insufficient to establish federal jurisdiction. *United States v. Gallenardo*, 540 F. Supp. 2d 1172, 1176 (D. Mont. 2007).

*Trial Testimony and Gallenardo's Motion for a Mistrial*

Linda Elaine Jollo (Jollo), Gallenardo's ex-wife, testified concerning Gallenardo's interaction with L.P., a male juvenile under the age of eighteen who was "a laborer in [Gallenardo's] construction business." Jollo stated that in May, 2005, she was searching for evidence of Gallenardo's suspected infidelity. She searched Gallenardo's pickup truck and found Gallenardo's briefcase. Inside the briefcase, Jollo found a videotape and four camera disks. She viewed one of the disks

and saw "[p]ictures of [L.P.] with his clothes off." Some of these images were "sexually explicit." Jollo viewed another disk and found similar images of L.P. Jollo recognized the background in the images as the basement of her home.

When Jollo informed Gallenardo that she had found the pictures, Gallenardo got upset. He went into the house, and retrieved two manila envelopes that "were the same LX-2 that was on the disks."

Gallenardo demanded that Jollo give him the disks she had. When Jollo told Gallenardo that she did not have the disks with her, Gallenardo "started to threaten [Jollo], but he didn't complete the threat." Gallenardo burned the disks and video-tape in a burn barrel.

L.P. testified that Gallenardo lived in L.P.'s uncle's apartment, which was located above L.P.'s residence. L.P. estimated that he was fourteen when he started to visit Gallenardo at the house Gallenardo later shared with Linda, and when he started working for Gallenardo. L.P. was "[p]robably 16 or 15" when Gallenardo "was taking the video or taking the pictures." According to L.P., the pictures were "naked pictures of [L.P.] and of [Gallenardo]." L.P. admitted that when confronted by Jollo, he lied when he told her that Gallenardo had not touched him.

L.P. stated that Gallenardo tricked him into taking the pictures by promising that "this would be . . . the only and . . . the last time it ever happened." L.P. stated that the pictures were taken in Gallenardo's "basement, lower bedrooms." Gallenardo asked L.P. to touch himself and to shave his private parts.

L.P. also related that Gallenardo took "[n]aked pictures" of L.P. while L.P. was "sitting on [Gallenardo's] motorcycle." According to L.P., he did not feel "like [he] had a choice in the pictures." Gallenardo would touch L.P. "[o]n [his] penis"

while taking the pictures. Gallenardo also asked L.P. to touch him. Gallenardo videotaped L.P. removing his clothing, and L.P. testified that "the touching [also] occur[red] on the videotape."

Detective Larsen testified that she "receiv[ed] information alleging that William Gallenardo had taken sexually explicit pictures of [L.P.], who was under the age of 18." According to Detective Larsen, L.P. was sixteen years old at the time she interviewed him. Detective Larsen subsequently arranged for a recorded telephone call to be made to Gallenardo. During Detective Larsen's testimony, the recorded telephone call was played.[1] In the conversation, L.P. stated that he was scared because "Kelly's trying to — to get me to talk to the police . . . . Nathan said something. I don't know what he said though." Gallenardo responded:

> Thanks for calling, it's really important that you know this. Now, Kelly has went off the deep end emotionally, psychotically, and she has got Nathan and her little son to start to change their stories, which means that — you know — she's just influenced them. And with that influence, she — they say that I brushed his pants or tried to put my hands down his pants. Now, that's absolutely not true and so she's been talking to the police and the police say they have to build a case and find people to say that I molested them and the best they can get Nathan to say is that I might have maybe tried to put my hands down his pants. And slowly, over the course of the last year, it's been changing, his story has been giving way to like pressure. Now, that's called — that [sic] wrong in the law; it's wrong physically, and stuff like that. Now, they finally after a year, they're — they're starting to make it so that her little son —

---

[1]The defense did not object to the playing of the audiotape or to the admission of the tape into evidence.

oh, I forget the littlest one's name — is starting to (INAUDIBLE) and go yeah, maybe he — oh, hi mom, they said I — I had both boys sitting on my lap telling them sex stories that they can't really describe what the sex stories [sic] and so they're — they just got the kids going in circles and getting crazy. And all you got to do is say, Kelly, nothing happened and leave it at that.

When L.P. asked about the pictures, Gallenardo stated "[t]here's nothing about the pictures, they're gone, they're burned. There's no nothing. It's a bluff. And they're doing that, adults will do that, they'll try to manipulate and control you."

Gallenardo instructed L.P. to tell the police "that Kelly asked you to come because, uh, she thinks something went on and you keep telling her, you told your dad, you told her brother, and you'll tell them again, nothing happened." Gallenardo also told L.P. that "you're [sic] dad'll be home too and — uh, just talk to your dad and just say, wow, Kelly's really pressured me and wants me to go to the police or something and I'm going like what for, and she's saying William's done all these things and I — I don't know that he's done anything . . . . Well, okay, just keep with that. It's either that or I spend 25 years in prison." Gallenardo again reassured L.P. that the pictures "were burned in the burn barrel."

After the audiotape was played, the district court instructed the jury:

I wanted to tell the jury, the initial part of that telephone conversation, I want you to disregard whatever suggestions there were about somebody else. We're not here to pry or even know if there are any other allegations involved. So disregard the very first part of that tape.

After the jury was dismissed, the district court informed the parties that it would not have allowed the playing of the first portion of the audiotape had it known about the references to the other allegations against Gallenardo. Gallenardo's counsel moved for a mistrial based on his "failure to object to that audio coming in." The district court held that the audiotape was not prejudicial enough to warrant a mistrial, and denied Gallenardo's motion.[2]

The district court further instructed the jury:

> Now, you heard an audiotape of a conversation between the defendant and LP. In reaching a verdict in this case, you may only consider the portions of that conversation relating to the defendant's interactions with LP. You must disregard any suggestion or allegation contained on that tape that relates to the defendant's possible or alleged interaction with others.

The jury found Gallenardo guilty of sexual exploitation of a child and possession of child pornography. The district court sentenced Gallenardo to a mandatory life sentence pursuant to 18 U.S.C. § 3559(e) due to Gallenardo's prior Montana conviction for sexual assault. Gallenardo filed a timely notice of appeal.

## II.   STANDARDS OF REVIEW

"We review a district court's denial of a motion to dismiss an indictment on constitutional grounds *de novo*." *United States v. McCalla*, 545 F.3d 750, 753 (9th Cir. 2008) (citation omitted). "A district court's denial of a motion for mistrial is reviewed for abuse of discretion." *United States v. Hagege*, 437 F.3d 943, 958-59 (9th Cir. 2006) (citation omitted).

---

[2]The district court also denied Gallenardo's Rule 29 motion premised on the prosecution's failure to prove the requisite interstate commerce jurisdictional element.

"Although we generally review the district court's evidentiary rulings for abuse of discretion, we review the district court's ruling for plain error when the defendant did not object during trial on the basis he asserts on appeal." *United States v. Banks*, 514 F.3d 959, 975-76 (9th Cir. 2008) (citations omitted).

"Questions of statutory interpretation are reviewed *de novo*." *United States v. Youssef*, 547 F.3d 1090, 1093 (9th Cir. 2008) (citation omitted).

## III. DISCUSSION

### A. The Requisite Interstate Commerce Nexus

Relying on *United States v. McCoy*, 323 F.3d 1114 (9th Cir. 2003), Gallenardo challenges the district court's denial of his motion to dismiss the indictment, arguing that his intrastate possession of child pornography does not provide the requisite interstate commerce nexus for federal jurisdiction. Gallenardo maintains that his usage of a camera and camera disks which traveled in interstate commerce was insufficient to support the requisite interstate commerce nexus for federal jurisdiction.

[1] However, in *McCalla*, we held that "[b]ecause it is rational to conclude that homegrown child pornography affects interstate commerce, we need not inquire into the specifics of [the defendant's] possession: when a general regulatory statute bears a substantial relation to commerce, the *de minimis* character of individual instances arising under that statute is of no consequence." *McCalla*, 545 F.3d at 756 (citation and internal quotation marks omitted). We also overruled *McCoy*. *See id.* ("Moreover, to the extent the reasoning employed in *McCoy* relied on the local nature of the activity, it has been overruled by the Supreme Court's decision in *Raich*.") (citation omitted). As we recognized in *McCalla*, Gallenardo's intrastate possession of child pornography may

affect interstate commerce. Therefore, the district court properly rejected Gallenardo's jurisdictional challenge. *See id.*

### B.   The Audiotape ³

**[2]** The district court acknowledged that reference to the other allegations on the tape should have been redacted. However, reference to the other allegations was harmless, as "it is more probable than not that the erroneous admission of the evidence did not affect the jury's verdict." *United States v. Ramirez-Robles*, 386 F.3d 1234, 1244 (9th Cir. 2004) (citation and internal quotation marks omitted).

**[3]** The record reflects that the prosecution had a strong case independent of the initial portions of the audiotape. Jollo testified that she had seen sexually explicit images of L.P. on the camera disks from Gallenardo's briefcase. She also testified that, when confronted with the disks, Gallenardo burned the items in a burn barrel. On the remaining portions of the audiotape,⁴ Gallenardo told L.P. that he had burned the pictures of L.P. Gallenardo also instructed L.P. to lie about the pictures and their interactions. L.P. extensively testified about the sexually explicit pictures that Gallenardo took of L.P., and the sexual contact between L.P. and Gallenardo. The district court gave two cautionary instructions regarding the portion of the audiotape referring to other individuals. *See United States v. Laykin*, 886 F.2d 1534, 1544 (9th Cir. 1989) (holding error harmless where limiting instruction was provided).

**[4]** We conclude that the playing of the first portion of the audiotape did not warrant a mistrial "because [Gallenardo] did not object at trial, did not request any limiting instruction, and

---

³Although the parties dispute the applicable standard of review, Gallenardo's argument fails under both the abuse of discretion and plain error standards of review.

⁴Gallenardo does not challenge the admissibility of the balance of the audiotape.

the evidence of [his] guilt was otherwise overwhelming." *United States v. McKenna*, 327 F.3d 830, 842 (9th Cir. 2003). In addition, we presume that the jury followed the district court's limiting instruction. *See Laykin*, 886 F.2d at 1544.

## C. The District Court's Imposition of a Mandatory Life Sentence

Gallenardo contends that the district court erred in imposing a mandatory life sentence pursuant to 18 U.S.C. § 3559(e) due to his prior Montana conviction for sexual assault. Gallenardo maintains that 18 U.S.C. § 3559(e) is inapplicable because the statute of conviction, 18 U.S.C. § 2251, provides the applicable recidivist provision. According to Gallenardo, his sentence should have been limited to 18 U.S.C. § 2251(e)'s twenty-five to fifty-year range.

A June 25, 1987, information charged that Gallenardo violated Mont. Code Ann. section 45-5-502(1) and (3) when he "knowingly subjected . . . a minor the age of 13 years to sexual contact without consent by causing [the minor] to place his mouth over the defendant's penis and by placing his mouth over the penis of [the minor]." A July 2, 1987, information charged that Gallenardo violated Mont. Code Ann. section 45-5-502(1) and (3) because he "committed the offense of Sexual Assault, a Felony, when he knowingly subjected . . . a minor who is 9 years of age, not his spouse, to sexual contact without consent, by placing his mouth on the penis of [the minor]." Gallenardo pled guilty to both counts. Gallenardo was sentenced to consecutive twenty-year terms.

**[5]** 18 U.S.C. § 3559(e)(1) provides:[5]

---

[5]Section 3559(e) provides in full:

(1) In general.—A person who is convicted of a Federal sex offense in which a minor is the victim shall be sentenced to life imprisonment if the person has a prior sex conviction in which a minor was the victim, unless the sentence of death is imposed.

A person who is convicted of a Federal sex offense in which a minor is the victim shall be sentenced to life imprisonment if the person has a prior sex conviction in which a minor was the victim, unless the sentence of death is imposed.

(2) Definitions.—For the purposes of this subsection— (A) the term "Federal sex offense" means an offense under section 1591 (relating to sex trafficking of children), 2241 (relating to aggravated sexual abuse), 2242 (relating to sexual abuse), 2244(a)(1) (relating to abusive sexual contact), 2245 (relating to sexual abuse resulting in death), 2251 (relating to sexual exploitation of children), 2251A (relating to selling or buying of children), 2422(b) (relating to coercion and enticement of a minor into prostitution), or 2423(a) (relating to transportation of minors); (B) the term "State sex offense" means an offense under State law that is punishable by more than one year in prison and consists of conduct that would be a Federal sex offense if, to the extent or in the manner specified in the applicable provision of this title— (i) the offense involved interstate or foreign commerce, or the use of the mails; or (ii) the conduct occurred in any commonwealth, territory, or possession of the United States, within the special maritime and territorial jurisdiction of the United States, in a Federal prison, on any land or building owned by, leased to, or otherwise used by or under the control of the Government of the United States, or in the Indian country (as defined in section 1151); (C) the term "prior sex conviction" means a conviction for which the sentence was imposed before the conduct occurred constituting the subsequent Federal sex offense, and which was for a Federal sex offense or a State sex offense; (D) the term "minor" means an individual who has not attained the age of 17 years; and (E) the term "state" has the meaning given that term in subsection (c)(2).

(3) Nonqualifying felonies.—An offense described in section 2422(b) or 2423(a) shall not serve as a basis for sentencing under this subsection if the defendant establishes by clear and convincing evidence that— (A) the sexual act or activity was consensual and not for the purpose of commercial or pecuniary gain; (B) the sexual act or activity would not be punishable by more than one year in prison under the law of the State in which it occurred; or (C) no sexual act or activity occurred.

**[6]** 18 U.S.C. § 2251(e) provides:

> Any individual who violates, or attempts or con-
> spires to violate, this section shall be fined under this
> title and imprisoned not less than 15 years nor more
> than 30 years, but if such person has one prior con-
> viction under this chapter, section 1591, chapter 71,
> chapter 109A, or chapter 117, or under section 920
> of title 10 (article 120 of the Uniform Code of Mili-
> tary Justice), or under the laws of any State relating
> to aggravated sexual abuse, sexual abuse, abusive
> sexual contact involving a minor or ward, or sex traf-
> ficking of children, or the production, possession,
> receipt, mailing, sale, distribution, shipment, or
> transportation of child pornography, such person
> shall be fined under this title and imprisoned for *not
> less than 25 years nor more than 50 years* . . .

(emphasis added).

**[7]** "Where an appellate court can construe two statutes so
that they conflict, or so that they can be reconciled and both
can be applied, it is obliged to reconcile them." *Momeni v.
Chertoff*, 521 F.3d 1094, 1097 (9th Cir. 2008) (footnote refer-
ence omitted). When statutes "were enacted at the same time
and form part of the same Act, the duty to harmonize them is
particularly acute." *US West Commc'n, Inc. v. Hamilton*, 224
F.3d 1049, 1053 (9th Cir. 2000), *as amended* (citation omitted).[6]

**[8]** We conclude that 18 U.S.C. § 3559(e) may be recon-
ciled with 18 U.S.C. § 2251(e) by recognizing that 18 U.S.C.
§ 3559(e) is more specific in its coverage. Section 2251(e)'s
broad scope is exemplified by its enumerated predicate

---

[6]Section 3559(e) was added by the Prosecutorial Remedies and Tools
Against the Exploitation of Children Today Act (PROTECT Act). Pub. L.
No. 108-21, 117 Stat. 650, 654-55. Section 2251 was also amended by the
PROTECT Act. *See id.* at 683.

offenses, which are not limited to offenses where the victim is a minor. For example, prior convictions under section 920 of title 10; chapter 71; chapter 109A, and chapter 117 include offenses not related to minors. *See, e.g.*, 10 U.S.C. § 920(a) ("Any person subject to this chapter who causes *another person of any age* to engage in a sexual act by . . . using force against that other person . . . is guilty of rape and shall be punished as a court-martial may direct.") (emphasis added); *see also* chap. 71, 18 U.S.C. § 1460 (possession of obscene matter on federal property); chap. 71, 18 U.S.C. § 1461 (mailing obscene matter); chap. 71, 18 U.S.C. § 1464 (broadcasting obscene language); chap. 109A, 18 U.S.C. § 2241(a) (aggravated sexual abuse of "another person"); chap. 109A, 18 U.S.C. § 2242 (sexual abuse of "another person"); chap. 109A, 18 U.S.C. § 2244 (abusive sexual contact).

With respect to state convictions, 18 U.S.C. § 2251(e) similarly covers a broad range of offenses for "aggravated sexual abuse [and] sexual abuse" that may or may not involve a minor victim. *See* 18 U.S.C. § 2251(e). This is particularly true when one considers that 18 U.S.C. § 2251(e) utilizes the term "relating to" in conjunction with the predicate state offenses. In *United States v. Sinerius*, 504 F.3d 737, 743 (9th Cir. 2007), we observed that "relating to" has broad implications. In that case, we considered whether a Montana conviction for sexual assault was a proper predicate offense to enhance a sentence for receipt and possession of child pornography in violation of 18 U.S.C. § 2252A. *See Sinerius*, 504 F.3d at 738. We opined:

> Further, § 2252A employs broader language when defining state convictions that qualify as a predicate sex offenses [sic] than it does when defining predicate federal offenses, such as those located in chapter 109A. An individual must be convicted of the specific federal offense listed to be subject to an enhanced sentence. However, such individual need only be convicted of a state offense relating to sexual

abuse to have the same penalty imposed. The phrase relating to, as defined by the Supreme Court, means to stand in some relation to; to have bearing or concern; to pertain; refer; to bring into association with or connection with . . . . In short, § 2252A does not simply mandate a sentencing enhancement for individuals convicted of state offenses equivalent to sexual abuse. Rather, it mandates the enhancement for any state offense that stands in some relation, bears upon, or is associated with that generic offense.

*Id.* at 743 (citations, alteration, emphases, and internal quotation marks omitted).

**[9]** In contrast to § 2251(e), § 3559(e) narrows the categories of predicate state offenses by requiring that the state offense be "punishable by more than one year in prison" and involve a minor as the victim. *See* 18 U.S.C. § 3559(e)(1) & (2). Section 2251(e) does not similarly limit the predicate state offenses, particularly as section 2251(e) does not require that the offenses be felony convictions, or focus on the age of the victim.

This distinction is brought into sharp relief by considering that convictions under 18 U.S.C. § 1591 are generally encompassed by the language of both 18 U.S.C. § 2251(e) and § 3559(e). However, the dispositive distinction is that § 3559(e)(2) mandates a life sentence only for that specific subset of prior convictions under 18 U.S.C. § 1591 where the victim is a minor. *See United States v. Moore*, 567 F.3d 187, 191 (6th Cir. 2009) ("[Section] 2251(e) appears specific only by way of [the defendant's] tortured interpretation, and § 3559(e)(1) appears general only if we omit that section's express definitions, e.g., prior sex conviction and Federal sex offense. Section 3559(e) may cover more crimes and criminals than § 2251(e)(1) but that does not render it any less *spe-*

*cific*.”) (internal quotation marks omitted) (emphasis in the original).**7**

**[10]** “It is a cardinal canon of statutory construction that statutes should be interpreted harmoniously with their dominant legislative purpose.” *United States v. Nader*, 542 F.3d 713, 720 (9th Cir. 2008) (citation and parentheses omitted). Congress passed the PROTECT Act so as to increase the penalties for those who victimize children. *See, e.g.*, S. Rep. 108-2, at *19 (“This bill also contains a variety of other measures designed to increase jail sentences in cases where children are victimized by sexual predators . . . . [I]t enhances penalties for repeat offenders of child sex offenses by expanding the predicate crimes that trigger tough, mandatory minimum sentences . . . . These are all strong measures designed to protect children and increase prison sentences for child molesters and those who otherwise exploit children.”). Thus, it does not appear that Congress passed section 3559(e) with the intent that section 2251(e)’s provisions provide more lenient penalties for repeat offenders.

**[11]** We conclude that 18 U.S.C. § 3559(e) is applicable to

---

**7**18 U.S.C. § 1591(a)(2006), “Sex trafficking of children or by force, fraud or coercion,” provides:

> Whoever knowingly— (1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, or obtains by any means a person; or (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1), knowing that force, fraud, or coercion described in subsection (c)(2) will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished . . .

Despite the first part of its title, § 1591 may involve non-minor victims. *See, e.g.*, *United States v. Chang Da Liu*, 538 F.3d 1078, 1085 (9th Cir. 2008).

Gallenardo's offenses, as "general and specific provisions, in apparent contradiction, whether in the same or different statutes, and without regard to priority of enactment, may subsist together, the specific qualifying and supplying exceptions to the general." *Santiago Salgado v. Garcia*, 384 F.3d 769, 774 (9th Cir. 2004) (citation omitted).

Gallenardo contends that his prior state conviction for felony sexual assault is not within 18 U.S.C. § 3559(e)'s purview because his conduct did not involve interstate or foreign commerce.[8]

18 U.S.C. § 3559(e) defines the term "State sex offense" as:

> an offense under State law that is punishable by more than one year in prison and consists of conduct that *would be a Federal sex offense if*, to the extent or in the manner specified in the applicable provision of this title— (i) the offense involved interstate or foreign commerce, or the use of the mails; or (ii) the conduct occurred in any commonwealth, territory, or possession of the United States, within the special maritime and territorial jurisdiction of the United States, in a Federal prison, on any land or building owned by, leased to, or otherwise used by or under the control of the Government of the United States, or in the Indian country (as defined in section 1151)[.]

18 U.S.C. § 3559(e)(2)(B)(emphasis added).

---

[8]Gallenardo does not contend that the underlying conduct of his state conviction was not the equivalent of a federal offense. Gallenardo was convicted of violating Mont. Code Ann. section 45-5-502(1) and (3) (1987) because of his sexual assault on two minors. It appears that Gallenardo's conduct would be equivalent to conduct prohibited by 18 U.S.C. § 2241(c) or 18 U.S.C. § 2244.

In examining statutory terms, "we should usually give words their plain, natural, ordinary and commonly understood meanings." *United States v. Romo-Romo*, 246 F.3d 1272, 1275 (9th Cir. 2001) (citations omitted). "We must then apply the further principle that if the language of a statute is clear, we look no further than that language in determining the statute's meaning." *Id.* (citation and internal quotation marks omitted).

The plain and unambiguous language of 18 U.S.C. § 3559(e) undermines Gallenardo's argument. Section 3559(e)(2)(B) provides that a state sex offense qualifies as a predicate offense if the conduct "would be" a Federal sex offense "if" it had involved interstate or foreign commerce or "if" it occurred within federal jurisdiction. *See* 18 U.S.C. § 3559(e)(2)(B). A plausible reading of the plain meaning of these terms conveys the notion that a state offense would be a qualifying predicate if the underlying conduct had occurred on federally controlled areas or involved either interstate or foreign commerce. Under Gallenardo's approach, we would have to disregard the plain meaning of the statute and import unsupported jurisdictional elements. However, "[t]his plain meaning is conclusive, unless the literal application of a statute produces a result demonstrably at odds with the intentions of its drafters." *United States v. Flores-Garcia*, 198 F.3d 1119, 1123 (9th Cir. 2000) (citation, alterations, and internal quotation marks omitted).[9]

---

[9]Our approach in *United States v. Castillo-Rivera*, 244 F.3d 1020 (9th Cir. 2001), is instructive. In that case, we considered whether a California state conviction for firearm possession qualified as an aggravated felony although the California statute "does not require an interstate or foreign commerce nexus." *Id.* at 1022. We reasoned that "[i]nterpreting the jurisdictional element of § 922(g) to be necessary in order for a state firearms conviction to constitute an aggravated felony under § 1101(a)(43)(E)(ii) would reduce the number of state firearms offenses that qualify to no more than a negligible number. Rarely, if ever, would a state firearms conviction specify whether a commerce nexus exists. If we were to construe the jurisdictional nexus of the federal felon in possession provision to be a

Importantly, Gallenardo's argument ignores 18 U.S.C. § 3559(e)(2)(A)'s definition of a "Federal sex offense." "Along with the specific provisions at issue, we examine the structure of the statute as a whole, including its object and policy." *Stratman v. Leisnoi, Inc.*, 545 F.3d 1161, 1167 (9th Cir. 2008) (citation and internal quotation marks omitted). "In viewing the statutory context, we attempt to give effect, if possible, to every clause and word of a statute." *Id.* at 1168 (citation and alteration omitted). Logically, if Congress intended to require that state sex offenses satisfy federal jurisdictional requirements, the qualifying language in 18 U.S.C. § 3559(e)(2)(B) would be superfluous. Given the definition of "Federal sex offense" in 18 U.S.C. § 3559(e)(2)(A), 18 U.S.C. § 3559(e)(2)(B) would only state: "[T]he term 'State sex offense' [means] an offense under State law that is punishable by more than one year in prison and consists of conduct that would be a Federal sex offense[.]" Instead, 18 U.S.C. § 3559(e)(2)(B) contains additional qualifying language removing the federal jurisdictional requirements delineated in the federal offenses enumerated in 18 U.S.C. § 3559(e)(2)(A).[10]

---

necessary element for a state crime to qualify as an aggravated felony, we would undermine the language of the aggravated felony statute and the evident intent of Congress." *Id.* at 1023-24 (footnote reference omitted). We reach a similar conclusion regarding predicate state sex offenses involving a minor as the victim, as most state statutes do not include federal jurisdictional elements for such crimes. *See, e.g.*, Alaska Stat. § 11.41.434; Ariz. Rev. Stat. Ann. § 13-1405; Cal. Penal Code § 269; Haw. Rev. Stat. § 707-730; Nev. Rev. Stat. Ann. § 200.366; Or. Rev. Stat. § 163.427; Wash. Rev. Code § 9.68A.040.

[10]Each of the enumerated offenses qualifying as a "Federal sex offense" under 18 U.S.C. § 3559(e)(2)(A) meets the federal jurisdictional requirement. *See* 18 U.S.C. § 1591(a)(1); 18 U.S.C. 2241(a); 18 U.S.C. § 2242; 18 U.S.C. § 2244(a); 18 U.S.C. § 2251(a)-(d); 18 U.S.C. § 2251A(c); 18 U.S.C. § 2422(a)-(b); 18 U.S.C. § 2423(a). 18 U.S.C. § 2245(a) cross-references the applicable statutes that meet federal jurisdictional requirements.

**[12]** In *United States v. Rosenbohm*, 564 F.3d 820, 823-25 (7th Cir. 2009), the Seventh Circuit reached a similar conclusion. The Seventh Circuit rejected the defendant's argument that § 3559(e) requires a federal nexus for the predicate state convictions, opining that "[t]he plain meaning of [§ 3559(e)'s] language is that a qualifying state conviction must have been based on conduct that—although lacking a federal nexus—would have constituted a Federal sex offense had such a federal nexus existed." *Id.* at 823 (citation and internal quotation marks omitted). The Seventh Circuit held that:

> under § 3559(e), a mandatory life sentence is appropriate for a defendant with a prior state conviction based on conduct that would have been a Federal sex offense had there been a basis for federal jurisdiction. The statute does not require that a federal jurisdictional hook actually exist. In other words, the statute demands only that the conduct resulting in the prior state conviction satisfy the elements of one of the Federal sex offenses enumerated in § 3559(e)(2)(A) before a district court may rely on it as the basis for imposing a mandatory life sentence. [The defendant's] prior Illinois conviction for aggravated criminal sexual assault meets that requirement, and it is therefore a qualifying State sex offense under § 3559(e).

*Id.* at 825 (internal quotation marks omitted). For the reasons articulated above, we agree with the Seventh Circuit that "[t]o provide children this protection from only those sex offenders who abused their victims using interstate commerce or the mails or on federal land would frustrate Congress's intent in enacting § 3559(e)." *Id.*

**[13]** Finally, we are unswayed by Gallenardo's contention that the rule of lenity points us toward application of 18 U.S.C. § 2251(e) rather than § 3559(e) to determine his sen-

tence. "The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." *Nader*, 542 F.3d at 721 (citation and internal quotation marks omitted). "The rule of lenity, however, is rooted in fundamental principles of due process which mandate that no individual be forced to speculate, at peril of indictment, whether his conduct is prohibited." *Id.* (citation and internal quotation marks omitted). "The rule of lenity applies only where after seizing every thing from which aid can be derived, the Court is left with an ambiguous statute . . . . The language of the statute must be grievously ambiguous." *Id.* (citations and internal quotation marks omitted). "Lenity, which is rooted in considerations of notice, may not be used in complete disregard of the purpose of the legislature . . ." *United States v. Carr*, 513 F.3d 1164, 1168 (9th Cir. 2008) (citations and internal quotation marks omitted). Because we have resolved any ambiguities through the basic canons of statutory construction and the legislative purpose is crystal clear, the rule of lenity is inapplicable. *See United States v. Bendtzen*, 542 F.3d 722, 727-28 (9th Cir. 2008); *see also Rosenbohm*, 564 F.3d at 825 (expressly noting the stated Congressional intent to "permanently remov[e] the worst offenders from our society — those who repeatedly victimize children.") (citation omitted).

**[14]** The district court, therefore, properly imposed a mandatory life sentence pursuant to 18 U.S.C. § 3559(e).

## IV. CONCLUSION

**[15]** The district court did not err when it rejected Gallenardo's jurisdictional challenge, because intrastate possession of child pornography may provide the requisite interstate commerce nexus to bestow federal jurisdiction. Neither did the district court err when it denied Gallenardo's motion for a mistrial, as the inclusion of the challenged portions of the audiotape was harmless in light of the strong evidence against Gallenardo. Finally, imposition of a mandatory life sentence pursuant to 18 U.S.C. § 3559(e) was proper.

**AFFIRMED.**