**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee*,

v.

WILLIE DWAYNE MICKEY, AKA
Ace,
            *Defendant-Appellant.*

No. 16-50343

D.C. No.
3:15-cr-01201-
BTM-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Barry Ted Moskowitz, Chief Judge, Presiding

Argued and Submitted February 15, 2018
Pasadena, California

Filed July 30, 2018

Before: M. Margaret McKeown and Kim McLane
Wardlaw, Circuit Judges, and James Donato,* District
Judge.

Opinion by Judge McKeown

* The Honorable James Donato, United States District Judge for the Northern District of California, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed convictions for two counts of sex trafficking by force, threats of force, fraud, or coercion in violation of 18 U.S.C. §§ 1591(a) and (b)(1).

The panel held that the district court did not err by refusing to give a specific unanimity instruction regarding which precise combination of means the defendant used to cause the victim to engage in a commercial sex act. The panel rejected the defendant's contention that force, threats of force, fraud, and coercion are separate elements of the crime.

The panel held that although the prosecution technically erred in failing to include the statutory phrase "or any combination of such means" in the indictment, inclusion of that phrase in the jury instructions and Special Verdict Form did not constitute a constructive amendment of the indictment. The panel wrote that the defendant cannot show prejudice, and concluded that there was no plain error.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Marc X. Carlos (argued), Bardsley & Carlos LLP, San Diego, California, for Defendant-Appellant.

Mark R. Rehe (argued), Assistant United States Attorney; Helen H. Hong, Chief, Appellate Section, Criminal Division; United States Attorney's Office, San Diego, California; for Plaintiff-Appellee.

## OPINION

McKEOWN, Circuit Judge:

The lesson from this case is that the devil is in the details—from the language of the statute to the recitation of the crime in the indictment, in the jury instructions, and the special verdict form. After a five-day jury trial, Willie Dwayne Mickey was convicted of two counts of sex trafficking by force, threats of force, fraud, or coercion in violation of 18 U.S.C. §§ 1591(a) and (b)(1). Mickey challenges the district court's refusal to give a specific unanimity instruction with respect to the means that he used to traffic his victims, and claims the government constructively amended the indictment by including the phrase "or any combination of such means" of force, threats of force, fraud, or coercion in the jury instructions and on the Special Verdict Form.[1] We affirm.

---

[1] We address Mickey's remaining challenges to an evidentiary issue and his sentencing in a memorandum disposition filed contemporaneously with this Opinion.

**Background**

Willie Mickey is, according to both parties in this appeal, "a pimp." Over the course of a several-year-long career, at least ten female prostitutes worked for him in some capacity.

In 2010, at age 25, Mickey married 21-year-old Lasasha Ray, a member of the United States Navy. Mickey told Ray soon after they married that he intended to continue seeing other women; needless to say, their relationship was tumultuous. Between 2010 and 2013, Mickey lived in the same house with Ray, together with two or three prostitutes at various times. Still, Ray and Mickey remained romantically involved and remained married at least until Mickey's trial in 2016.

Soon after his marriage to Ray, Mickey met 19-year old K.I. at Southwestern College. Even before she met Mickey, K.I. had worked as a prostitute, advertising herself on Craigslist and also working on the streets. Within two years of their meeting, K.I. moved in with Mickey and they began a romantic relationship. Mickey, Ray, and K.I. lived together for over a year, though Ray was sometimes gone for extended periods on military deployment. While K.I. was living with Mickey, she continued to work as a prostitute, posting advertisements of herself on "Backpage.com," a classified advertisement site.

K.I. lived with Mickey for several years, remaining in the house when additional prostitutes moved in. The relationship between the women in the house was at times "fine" and at times violent. At trial, K.I. denied that Mickey was her pimp and claimed he never forced her to be a prostitute. But the government introduced substantial evidence to the contrary, including that K.I.'s "Backpage" ads linked to email addresses and phone numbers belonging

to Mickey. Ray and another of Mickey's prostitutes, A.P., also testified that Mickey drove both A.P. and K.I. to "out-calls," after which both of them gave their proceeds to Mickey.

On Valentine's Day, 2012, Mickey and K.I. got into a fight. K.I. and Mickey "exchanged words." K.I. testified that she threw an object at Mickey, that he "threw an object back at [her]," and that K.I. "got hit." When Ray went outside, she saw K.I. "bleeding from the back of [her] head." Ray had also seen Mickey hit K.I. at least three times in the past. Mickey pled guilty to assault with a deadly weapon in violation of California Penal Code § 245 and spent 270 days in jail. K.I. continued to live with Mickey and act as a prostitute for him for several years after this incident.

Sometime in 2012 or 2013, Mickey began a romantic relationship with G.S., who eventually moved in with Mickey, Ray, and K.I. Mickey told G.S. that she would have to "hustle" if she was going to live with him, and she began working as a prostitute. Mickey exerted considerable control over her prostitution activities, setting prices, arranging calls with paying male customers, and giving G.S. guidelines on how to respond to inbound customer calls. G.S. also saw Mickey get violent with K.I.

In 2013, Mickey met 18-year-old A.P. on the social media site Tagged. After a period of friendship, the relationship became romantic, and A.P. moved in with Mickey after graduating from high school. At first, Mickey told A.P. that he worked security at a navy base, but eventually indicated that he was a pimp. Over time, he expressed his wish that A.P. work as a prostitute for him, and began posting images of A.P. to Backpage.com.

Mickey also exercised considerable control over A.P.'s prostituting activities, setting prices, deciding when encounters would take place, reserving hotel rooms, transporting A.P., and enforcing time limits. Mickey picked the names that A.P. was listed under in her advertisements and helped arrange logistics for commercial sex acts. Mickey also took a substantial amount of the money A.P. received in exchange for performing sex acts. Mickey prohibited A.P. from talking to family members or other men. The relationship between Mickey and A.P. was violent at times, as the two had "physical altercation[s]." A.P. testified that Mickey punched her repeatedly, "below the neck," for "many, many different reasons."

In late September 2014, A.P. decided that she wanted to leave Mickey. Mickey prevented her from leaving by punching and slapping her. He also threw a stool at A.P., hitting her in the back of the head. After Mickey forced her to spend the night, she fled the next day and called her parents, who came with police.

Mickey was eventually arrested, and the government filed a second superseding indictment charging him with three counts of sex trafficking in violation of 18 U.S.C. § 1591.[2] That provision punishes anyone who "recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person," knowing or in reckless disregard of the fact that "means of force, threats of force, fraud, coercion . . . *or any combination of such means*" will be used to cause the person to engage in a commercial sex act. 18 U.S.C. § 1591(a)

---

[2] Count 1 related to K.I. and count 2 to A.P. Count 3 was dropped when a third prostitute was unavailable for trial.

(emphasis added).  However, the prosecution's indictment omitted the phrase "or any combination of such means."

After a five-day trial, the jury returned a guilty verdict. With respect to count 1, the jury unanimously found that Mickey used "any combination of such means" of force, threats of force, fraud, or coercion in causing K.I. to engage in a commercial sex act.  With respect to count 2, the jury unanimously found that Mickey used force, threats of force, coercion, and any combination of such means in causing A.P. to engage in a commercial sex act.  The district court sentenced Mickey to the lower end of the guidelines range, 204 months in prison for counts 1 and 2, to run concurrently, followed by 10 years of supervised release.

## Analysis

The government created more heat than light in this case by submitting a Special Verdict Form that separately listed the individual means Mickey may have used to traffic his victims—force, threats of force, fraud, coercion, or any combination of such means.  *See* 18 U.S.C. §§ 1591(a), (b)(1).  The jury was asked five separate questions regarding whether Mickey used each of these methods rather than simply if Mickey trafficked his victims using any of these means, which was the actual issue at trial.  Neither the statute nor our precedent requires such specificity.  The government also committed a minor technical error by omitting the phrase "or any combination of such means" from the indictment, but that error did not rise to the level of a constructive amendment.  Mickey had ample notice of the charges against him and the jury was properly instructed on the nature of those charges.

## I. Specific Unanimity

The key issue on appeal is whether the district court was required to give a specific unanimity instruction for Count 1 regarding which precise combination of means Mickey used to cause K.I. to engage in a commercial sex act. Although Mickey did not object to the original instructions and did not ask for a specific unanimity instruction at the initial instruction conference, he made such a request after the jury came back with questions about the instructions. In light of this sequence, Mickey did not forfeit his request and thus we review for abuse of discretion the denial of a specific unanimity instruction. *United States v. Kim*, 196 F.3d 1079, 1082 (9th Cir. 1999).

Two jury instructions and the Special Verdict Form are the basis for Mickey's challenge. Instruction 15[3] set out the

---

[3] Jury Instruction 15 provided, in its entirety:

"The defendant is accused in the indictment on counts 1 and 2 as follows:

COUNT 1:

Beginning from at least August 1, 2013, and continuing through on or about April 9, 2015, in the Southern District of California, defendant WILLIE DWAYNE MICKEY, aka 'ACE,' in and affecting interstate and foreign commerce, knowingly and intentionally recruited, enticed, harbored, transported, provided, obtained and maintained K.I., knowing and in reckless disregard of the fact that means of force, threats of force, fraud, and coercion would be used to cause K.I. to engage in a commercial sex act, in violation of Title 18, United States Code, Sections 1591(a) and (b)(1).

counts in the indictment while Instruction 17[4] outlined the second element of the crime with respect to the mens rea

---

COUNT 2:

On or about and between August 1, 2013, through on or about September 30, 2014, in the Southern District of California, defendant WILLIE DWAYNE MICKEY, aka 'Ace,' in and affecting interstate and foreign commerce, knowingly recruited, enticed, harbored, transported, provided, obtained and maintained A.P., knowing and in reckless disregard of the fact that means of force, threats of force, fraud, and coercion would be used to cause A.P. to engage in a commercial sex act[,] in violation of Title 18, United States Code, Sections 1591(a) and (b)(1).

In order for a defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

(1) On or about the dates alleged in the indictment, the defendant knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained a person, that is, K.I . . . and/or A.P. . .

(2) The defendant knew, or was in reckless disregard of the fact that means of force, threats of force, fraud, coercion or any combination of such means would be used to cause K.I. and/or A.P. to engage in commercial sex acts, and

(3) The defendant's actions were in or affecting interstate or foreign commerce." (emphasis added).

[4] Jury Instruction 17 stated, in its entirety:

"The second element of the crime of sex trafficking by force, fraud, or coercion requires that the government prove beyond a reasonable doubt that the defendant

requirements and the means of sex trafficking. The court gave the standard Ninth Circuit Model Criminal Instruction on unanimity: "Your verdict, whether guilty or not guilty, must be unanimous." However, the Special Verdict Form contained specific questions regarding the means used to

---

knew, or was in reckless disregard of the fact [that] means of force, threats of force, fraud, or coercion would be used against the person to cause them to engage in a commercial sex act.

The term 'coercion' means:

(1) Threats of serious harm to, or physical restraint against the person; or

(2) Any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to, or physical restraint against, any person.

The term 'serious harm' means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all of the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm.

The term 'commercial sex act' means any sex act, on account of which anything of value is given to or received by any person.

'Force' means 'any form of power, violence, or physical pressure directed against another person.'

'Fraud' means 'any deliberate act of deception, trickery, or misrepresentation'" (emphasis added).

violate the statute.  That form, with the jury's answers to the questions, read:

> "We, the jury in the above-captioned case, return the following unanimous verdict:
>
> 1.  As to the charge in **Count 1** that:
>
> Beginning from at least August 1, 2013, and continuing through on or about April 9, 2015, in the Southern District of California, defendant WILLIE DWAYNE MICKEY, aka "ACE," in and affecting interstate and foreign commerce, knowingly and intentionally recruited, enticed, harbored, transported, provided, obtained and maintained K.I., knowing and in reckless disregard of the fact that means of force, threats of force, fraud, and coercion would be used to cause K.I. to engage in a commercial sex act; in violation of Title 18, United States Code, Section 1591(a) and (b)(1).
>
> We find, WILLIE DWAYNE MICKEY:
>
> <u>        Guilty        </u>
>
> If you find the defendant *guilty* on Count 1, answer the following paragraphs below:
>
> A.  Does the jury unanimously find beyond a reasonable doubt that the defendant knew or was in reckless disregard of the fact that means of force would be used to cause K.I. to engage in a commercial sex act?

_____ YES                  __X__ NO

B.  Does the jury unanimously find beyond a reasonable doubt that the defendant knew or was in reckless disregard of the fact that threats of force would be used to cause K.I. to engage in a commercial sex act?

_____ YES                  __X__ NO

C.  Does the jury unanimously find beyond a reasonable doubt that the defendant knew or was in reckless disregard of the fact that fraud would be used to cause K.I. to engage in a commercial sex act?

_____ YES                  __X__ NO

D.  Does the jury unanimously find beyond a reasonable doubt that the defendant knew or was in reckless disregard of the fact that coercion would be used to cause K.I. to engage in a commercial sex act?

_____ YES                  __X__ NO

E.  Does the jury unanimously find beyond a reasonable doubt that the defendant knew or was in reckless disregard of the fact that *any combination of such means of force, threats of force, fraud, or coercion* would be used to cause K.I. to engage in a commercial sex act?

__X__ YES                  _____ NO

2.  As to the charge in **Count 2** that:

On or about between August 1, 2013, through on or about September 30, 2014, in the Southern District of California, defendant WILLIE DWAYNE MICKEY, aka "ACE," in and affecting interstate and foreign commerce, knowingly recruited, enticed, harbored, transported, provided, obtained and maintained A.P., knowing and in reckless disregard of the fact that means of force, threats of force, fraud, and coercion would be used to cause A.P. to engage in a commercial sex act; in violation of Title 18, United States Code, Section 1591(a) and (b)(1).

We find, WILLIE DWAYNE MICKEY:

<u>        Guilty        </u>

If you find the defendant *guilty* on Count 2, answer the following paragraphs below:

A.  Does the jury unanimously find beyond a reasonable doubt that the defendant knew or was in reckless disregard of the fact that means of force would be used to cause A.P. to engage in a commercial sex act?

<u>  X  </u> YES                <u>        </u> NO

B.  Does the jury unanimously find beyond a reasonable doubt that the defendant knew or was in reckless disregard of the fact that

threats of force would be used to cause A.P. to engage in a commercial sex act?

  X   YES                             NO

C. Does the jury unanimously find beyond a reasonable doubt that the defendant knew or was in reckless disregard of the fact that fraud would be used to cause A.P. to engage in a commercial sex act?

         YES                    X   NO

D. Does the jury unanimously find beyond a reasonable doubt that the defendant knew or was in reckless disregard of the fact that coercion would be used to cause A.P. to engage in a commercial sex act?

  X   YES                             NO

E. Does the jury unanimously find beyond a reasonable doubt that the defendant knew or was in reckless disregard of the fact that *any combination of such means of force, threats of force, fraud, or coercion* would be used to cause A.P. to engage in a commercial sex act?

  X   YES        NO" (emphases added).

During deliberations, the jury submitted this handwritten note to the court:

"Court Instruction #15 and the Special Verdict form lists the factors of 'force, threats

of force, fraud, *AND* coercion would be used . . .' However, Court Instruction #17 lists 'force, threats of force, fraud, *OR* coercion would be used . . .' The question is, 'do we need to find *ALL* the above factors to satisfy the second element or *AT LEAST ONE* of the factors to satisfy the second element? Also, if no one single factor is found to be beyond a reasonable doubt, can the combination of two or more factors be used to find beyond a reasonable doubt to satisfy the second element?"

The district court discussed the jury's note with counsel and decided that the jury needed to agree on only one factor (i.e., force, threats of force, fraud, coercion, or any combination of such means) to satisfy the second element of the crime. The court also determined that the jury did not have to be unanimous with respect to the specific means, or combination of means, that Mickey used to traffic K.I. or A.P. The court instructed the jury that it could convict Mickey of either count based on a "combination" of means "as long as the combination [was] of the means of force, threats of force, fraud or coercion." In other words, the jury did not need to be unanimous on the specific combination of such means. Over Mickey's objection, the court declined to give a further unanimity instruction.

The jury's question was astute. So astute, in fact, that the identified issue was the subject of two Supreme Court cases. In *Schad v. Arizona*, the Court held that jurors are not "required to agree upon a single means of commission" to return a guilty verdict in a criminal case. 501 U.S. 624, 631–32 (1991). The Court reiterated that principle in *Richardson v. United States*: "a federal jury need not always decide

unanimously which of several possible sets of underlying brute facts make up a particular element" of a crime, or "which of several possible means the defendant used to commit an element of the crime." 526 U.S. 813, 817 (1999).

Hence, the Court has created a distinction between the "elements" of a crime and the "means" that a defendant uses to commit that crime. We have further clarified that "*elements* [are] those circumstances on which the jury must unanimously agree, while . . . *means* [are] those circumstances on which the jury may disagree yet still convict." *Rendon v. Holder*, 764 F.3d 1077, 1086 (9th Cir. 2014). Courts must make a "threshold inquiry" whether the "listed items" in an "alternatively phrased" statute are "elements or means." *Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016).

Mickey's argument that force, threats of force, fraud, and coercion are separate elements of the crime is unavailing. The statute on its face indicates that the listed alternatives— "*means of* force, threats of force, fraud, coercion . . . or any combination of *such means*"—are not elements but rather possible means to commit the crime of human trafficking. 18 U.S.C. §§ 1591(a), (b)(1) (emphasis added). The word "means" appears twice in the relevant statutory text, once before referring to each of the named alternatives, and once when describing the "combination of such means." 18 U.S.C. §§ 1591(a), (b)(1). None of the alternatives carries a different punishment. *See Mathis*, 136 S. Ct. at 2256; *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). And the statute does not identify each alternative as an element of the crime. *See Mathis*, 136 S. Ct. at 2256.

The title of the statute, "Sex trafficking . . . by force, fraud, or coercion," also supports the conclusion from the statutory language that the listed alternatives are means of

committing the crime. 18 U.S.C. § 1591. Parsing the title indicates that the crime—sex trafficking—occurs by any one of a group of means, "force, [threats of force], fraud, or coercion," to cause a person to engage in a commercial sex act. "Although statutory titles are not part of the legislation, they may be instructive in putting the statute in context." *United States v. Todd*, 627 F.3d 329, 335 (9th Cir. 2010) (M. Smith, J., concurring) (citation omitted).

In line with the general unanimity instruction, the jurors unanimously agreed that Mickey knew or was in reckless disregard of the fact that "any combination of such means" of force, threats of force, fraud or coercion would be used to traffic K.I. The jury did not need to "unanimously agree on a [more] specific classification of [Mickey's] conduct." *Kim*, 196 F.3d at 1083. And with respect to A.P., the jury did unanimously agree that Mickey used four of the five prohibited, underlying means to traffic her—force, threats of force, coercion, and any combination of such means.

Although we affirm the district court's denial of a specific unanimity instruction under the circumstances of this case, we observe that the government introduced considerable, and unnecessary, risk of error by asking the jury to decide which means Mickey used to traffic his victims. Subdividing a particular element of a crime into possible component means on a special verdict form is likely to garner an appeal. Not only might it confuse the jury and require further instructions, as happened here, but depending on the nature of the individual means included, the jury may lose sight of what facts it is meant to find. The risk could deepen further where the specific means included are mutually exclusive. Here, force, threats of force, fraud, and coercion are compatible with one another—Mickey could have used any or all of these tactics to commit his crime. But

one can imagine other circumstances where the individual means are incompatible. *See Schad*, 501 U.S. at 651 (Scalia, J., concurring) ("We would not permit, for example, an indictment charging that the defendant assaulted either X on Tuesday or Y on Wednesday. . . ."). The important lessons from this case are that the prosecution is required to prove every element of the crime beyond a reasonable doubt—without a requirement to subdivide the inquiry to the atomic level—and that jury instructions should not only match the statutory language but should be internally consistent. *See also Apprendi*, 530 U.S. at 477.

## II. Constructive Amendment Challenge

We next consider whether the inclusion of the statutory phrase "or any combination of such means" in the jury instructions and Special Verdict Form constituted a constructive amendment in view of the fact that the phrase was omitted from the operative indictment. The grand jury requirement of the Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. Hence, "the crime and the elements of the offense that sustain the conviction [must be] fully and clearly set out in the indictment." *United States v. Miller*, 471 U.S. 130, 136 (1985). For this reason, a constructive amendment violates the Fifth Amendment. Such an amendment occurs when "the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them." *United States v. Davis*, 854 F.3d 601, 603 (9th Cir. 2017) (citation omitted).

Because Mickey failed to raise the constructive amendment issue at trial, we review for plain error. *United States v. Cotton*, 535 U.S. 625, 631 (2002). Indeed, neither

Mickey nor the prosecution even noticed the omission of the "any combination of such means" language from the operative indictment until the district court pointed it out a full five months after the trial concluded. We may reverse only "if there has been (1) error; (2) that was plain; (3) that affected substantial rights; and (4) that seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Cannel*, 517 F.3d 1172, 1176 (9th Cir. 2008).

We have distinguished between a constructive amendment and a minor technical change or correction, and we must do so again here. The correction of an "obvious clerical error" does not result in a constructive amendment. *United States v. Pazsint*, 703 F.2d 420, 423 (9th Cir. 1983). In other words, a "defendant is not denied his or her right to a grand jury when the jury instructions and proof at trial diverge insignificantly from the indictment." *United States v. Hugs*, 384 F.3d 762, 767 (9th Cir. 2004). This is exactly what happened in Mickey's case.

Although, as a technical matter, the prosecution erred in failing to include the statutory phrase "or any combination of such means" in the indictment, the error did not "substantially alter[]" the charged violation. *See United States v. Adamson*, 291 F.3d 606, 615 (9th Cir. 2002). Critically, the grand jury indictment returned against Mickey listed the various means under 18 U.S.C. §§ 1591(a) and (b)(1) conjunctively. In other words, the grand jury charged Mickey with trafficking in knowing or reckless disregard of the fact that "means of force, threats of force, fraud *and* coercion would be used to cause K.I. to engage in a commercial sex act." (emphasis added); *see also* 18 U.S.C. §§ 1591(a), (b)(1). The language in the indictment for count

2, concerning A.P., also listed "force, threats of force, fraud, and coercion" conjunctively.

Because the indictment charged Mickey with *all four* means, it logically follows that the grand jury also found that Mickey used "any combination" of those means.   The specific language in the indictment meant that Mickey was given notice that he would have to defend against all four means—force, threats of force, fraud, and coercion.  *See United States v. Jingles*, 702 F.3d 494, 500–01 (9th Cir. 2012).   By the same token, the prosecution established probable cause for the precise conduct in which Mickey was alleged to have engaged.  *Id.*

Our conclusion that no constructive amendment took place here is strengthened by contrasting Mickey's case with that of the defendant in *Davis*, 854 F.3d at 601.  Davis was charged with trafficking a minor under 18 U.S.C. § 1591, while knowing or recklessly disregarding that the victim was under the age of 18.  *Id.* at 604.  But a jury instruction stated that the jury could convict if it found that Davis merely had a "reasonable opportunity to observe" the victim.  *Id.*  That instruction fundamentally altered the nature of the charges against Davis by changing the mens rea required for conviction.   The instruction constructively amended the indictment by "transforming the offense . . . into a strict liability offense."  *Id.* at 605 (citation omitted).  The omitted language in Mickey's case did no such thing.  Davis had no notice that he could be convicted merely if he had a reasonable opportunity to observe his victim.  Nor was it possible to know whether a grand jury would have indicted Davis for the crime he was ultimately convicted of.  The same cannot be said for Mickey.

Still further, Mickey's constructive amendment claim fails because he cannot show prejudice.  The terms of the

statute were well known and there is not a credible argument that Mickey would have approached his defense any differently had the "or any combination of such means" phrase been included in the indictment.  The inclusion of the phrase in the jury instructions and on the Special Verdict Form correctly stated the law, and Mickey's counsel affirmatively accepted the instructions and the form.  During the court's Federal Rule of Criminal Procedure 30 conference, counsel for Mickey stated: "We're fine with [jury instruction 15]."  When the court asked if there were "any . . . objections to the Government's proposed special verdict form," counsel for Mickey replied: "No[.]"  Mickey also did not object when the court read instruction 15 and the Special Verdict Form to the jury before it began deliberating.

The evidence at trial that Mickey used force, threats of force, fraud, *and* coercion in trafficking his victims was voluminous and overwhelming.  The omission in the indictment did not seriously affect the integrity of the proceedings.  Despite the lack of prejudice to Mickey, in the future the government should take care to get the statutory language in its indictments exactly correct and should cross reference that language with the text of the jury instructions.  Nonetheless, including the correct statutory phrase—"or any combination of such means"—in the jury instructions here was not plain error.

**AFFIRMED.**