FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 20-10318 |
| *Plaintiff-Appellee*, | D.C. Nos. 2:16-cr-00217-MCE-2 2:16-cr-00217-MCE |
| v. | |
| SHARMISTHA BARAI, | |
| *Defendant-Appellant*. | OPINION |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 20-10347 |
| *Plaintiff-Appellee*, | D.C. Nos. 2:16-cr-00217-MCE-1 2:16-cr-00217-MCE |
| v. | |
| SATISH KARTAN, | |
| *Defendant-Appellant*. | |

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, Jr., District Judge, Presiding

Argued and Submitted October 19, 2022
San Francisco, California

Filed December 20, 2022

Before:  Sidney R. Thomas, Milan D. Smith, Jr., and Lucy
H. Koh, Circuit Judges.

Opinion by Judge Koh

## SUMMARY[*]

### Criminal Law

Affirming the district court, the panel held that 18 U.S.C. § 1589(a)—under which the defendants were convicted of two counts of forced labor—lists alternative factual means, about which the jurors did not need to agree unanimously so long as they unanimously agreed that the defendants knowingly obtained forced labor by prohibited means.

The panel held that the district court therefore did not abuse its discretion in declining to give a specific unanimity instruction, and addressed the defendants' other challenges in a concurrently filed memorandum disposition.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

William W. Fick (argued) and Amy Barsky, Fick & Marx LLP, Boston, Massachusetts; John J.E. Markham II (argued), Markham Read Zerner LLC, Boston, Massachusetts; Brian C. McComas, Law Office of Brian McComas, San Francisco, California; for Defendants-Appellants.

Katherine T. Lydon (argued), Assistant United States Attorney; Jason Hitt; Camil A. Skipper, Assistant United States Attorney, Appellate Chief; Phillip A. Talbert, Acting United States Attorney; Office of the United States Attorney; Sacramento, California; for Plaintiff-Appellee.

Virginia M. Bruner, McGuireWoods LLP, Richmond, Virginia; Sean A. McClelland and Carolyn J. Appel, McGuireWoods LLP, Washington, D.C.; Lindsey N. Roberson and Alyssa C. Wheeler, The Human Trafficking Institute, Fairfax, Virginia; for Amicus Curiae Human Trafficking Institute.

**OPINION**

KOH, Circuit Judge:

Between February 2014 and October 2016, Defendant Sharmistha Barai and Defendant Satish Kartan recruited several "nannies" to live and work in their home. These nannies were subjected to a range of conditions, including: eighteen-hour workdays, limited food, isolation from their families, verbal and physical abuse, threats of violence, threats to call the authorities, and no pay. After an eleven-day jury trial, Barai and Kartan were convicted of conspiracy

to commit forced labor in violation of 18 U.S.C. § 1594(b) and two substantive counts of forced labor in violation of 18 U.S.C. § 1589(a). Kartan was also convicted of fraud in foreign labor contracting in violation of 18 U.S.C. § 1351(a). Barai and Kartan challenge their convictions and sentences.

We publish this opinion to address Barai's and Kartan's challenge to the district court's refusal to give a specific unanimity instruction with respect to the means by which they obtained forced labor.[1] We hold that 18 U.S.C. § 1589(a) lists alternative factual means, about which the jurors did not need to agree unanimously so long as they unanimously agreed that Barai and Kartan knowingly obtained forced labor by prohibited means.

## BACKGROUND AND PROCEEDINGS BELOW

Sharmistha Barai is a legal immigrant originally from Bangladesh. She is a physician and worked as a child psychiatrist. Satish Kartan is a naturalized United States citizen originally from India who worked nights as an IT engineer. The couple married in 2011, and had their first child, a daughter, in or around 2013. In 2015, the family moved to Stockton, California, where they lived when the events at issue occurred.

Between February 2014 and October 2016, Kartan advertised live-in nanny positions on South Asian classified listing services. The advertisements stated that the nannies would be paid for childcare and domestic work. The trial evidence showed that during this period, Barai and Kartan recruited at least six nannies to live and work in their

---

[1] We address the remainder of Barai's and Kartan's challenges in a concurrently filed memorandum disposition.

Stockton home.

The substantive forced labor charges were predicated on Barai's and Kartan's treatment of victim Rathanam Thamma and victim Puspanjali Thapa, respectively. Thamma worked for Barai and Kartan for one month and twenty days from July 2016 to August 2016. She came to the United States on a tourist visa prepared by a broker in which she represented that she was visiting a nonexistent daughter in New Jersey. Consistent with the other victims, Thamma testified at trial that her work hours were from 6:00 AM to 12:00 AM. During that time, she did not get enough food or sleep. She was not allowed to lock the door to her room or use the bathroom during the two periods during which she was required to feed the baby, totaling nine hours per day. She did not have a working cell phone to contact her family, so she gave Kartan $500, the only money she brought with her from India, to buy her one. Kartan never gave her a phone or returned her money. When she was allowed to use Kartan's phone to contact her family, Barai and Kartan were present for the calls and even turned off a fan in the room.

When Thamma complained to Kartan that she could not work the long hours, Kartan told Barai. Barai then yelled at Thamma and said, "This is my house. I will kill you and put you in the garbage. You come to my address so you have to work." Kartan berated Thamma, clapped his hands in her face, and threatened her for "telling on us" to her family. Barai also called Thamma derogatory names and, on at least one occasion, struck Thamma in the mouth for asking to bring in her drying clothes during hours when she was required to feed the baby.

Barai and Kartan required that Thamma warm her hands using a gas stove before handling the baby. Once, when the

baby had not had a bowel movement for several days, Barai and Kartan concluded that Thamma's hands were not warm enough.  They stood on either side of her and watched while she warmed her hands.  Barai then pushed Thamma's hands closer to the fire.  Thamma testified that her hands were burned and that she experienced pain.  Barai and Kartan did not offer Thamma any assistance after she was burned. About three days later, after Thamma left the house, Homeland Security Investigations agents took Thamma to an emergency room.  There, a doctor diagnosed her with "first- and second-degree burns" on both of her hands.

Thamma testified that Barai's and Kartan's actions scared her.  She said, "If I am here, they will kill me.  I have to go somewhere.  If I'm staying here, they will kill me.  I have to leave this place and go."  One day, when Barai and Kartan left the house, Thamma went to a neighbor's house, and the neighbors called the police to assist her.  Thamma was never paid for her work.

Another victim, Thapa, worked for Barai and Kartan for five days in September 2016.  Her working hours were from 5:00 AM to 11:00 PM, or later, and Kartan woke her up every morning by pounding on her door.  She was not allowed to take breaks.  When she tried to prepare food while sitting down, Kartan told her to stand up and took her chair away.  She was not allowed to eat the food that she prepared for the family and was instead told to eat leftovers that were three to four days old.  She said that these leftovers were "old, wet rice" that made her sick.  Kartan and Barai verbally berated her, calling her an "illegitimate woman," a "shameless person," and a "whore."  She also testified that Barai and Kartan "would come close to me as if they're going to beat me," call her derogatory names, and would shake their hands four to six inches from her face.  She had

her own cell phone, but whenever she used it, Kartan tried to grab the phone from her. When she confronted Kartan about leaving, he told her "no, no, no, no, work, work."

Thapa testified that she was scared of Kartan and Barai, and she kept working. When Thapa tried to leave, she lied to Kartan, telling him that her son needed to bring her a suitcase, and asked Kartan for the address. Kartan refused to give her the address and later gave her the wrong address. She had to call a friend and get instructions on how to find the house number on the outside of the door. She testified that when she asked to leave, Kartan threatened to call the police to scare her. Eventually, Thapa's nephew came to get her. She asked Kartan for the gate key so her nephew could enter the gated community. Kartan refused and told her to leave right away. Thapa was also never paid for her work.

The district court presided over an eleven-day jury trial, during which similar evidence of Barai's and Kartan's treatment of other nannies was admitted.[2] At the close of the trial, the district court instructed the jury. The instruction for the two substantive forced labor charges under § 1589(a) stated that the government needed to prove the following three elements beyond a reasonable doubt:

> First, the defendant obtained the labor or services of another person;
> Second, that the defendant did so through at least one of the following prohibited means:
>> a. force, threats of force, physical restraint, or threats of physical restraint to that person;

---

[2] Because that evidence is not relevant to this opinion, we do not discuss it here.

b. serious harm or threats of serious harm to that person;

c. the abuse or threatened abuse of law or legal process; or

d. a scheme, plan or pattern intended to cause the person to believe that if that person did not perform such labor or services that person or another person would suffer serious harm or physical restraint; and

Third, that the defendant acted knowingly.

Barai and Kartan proposed an instruction that would have told the jury that they must be unanimous as to which of the four prohibited means Barai and Kartan used to compel forced labor.  The district court rejected the proposed instruction.  The jury returned a unanimous guilty verdict on the operative counts.[3]

## DISCUSSION

Barai and Kartan argue that the district court's forced labor instruction was erroneous because § 1589(a)'s paragraphs each describe different legal elements.  We "review[] for abuse of discretion the district court's denial of a defendant's request for a specific unanimity instruction." *United States v. Tuan Ngoc Luong*, 965 F.3d 973, 985 (9th Cir. 2020) (citation omitted).  Although ordinarily, a general instruction that the verdict must be unanimous is sufficient, "[a] specific unanimity instruction is necessary 'where it

---

[3] The government voluntarily dismissed count 3, which charged Barai with benefitting from forced labor in violation of 18 U.S.C. § 1589(b), after the close of evidence and before the jury began deliberations.

appears that "there is a genuine possibility of jury confusion or that a conviction may occur as the result of different jurors concluding that the defendant committed . . . acts'" consisting of different legal elements." *Id.* (quoting *United States v. Anguiano*, 873 F.2d 1314, 1319 (9th Cir. 1989)).

Calling a particular part of a statute an "element," as opposed to a "means," is legally significant. *See Almendarez-Torres v. United States*, 523 U.S. 224, 239 (1998) (noting that an element must be stated in an indictment, proven by the government to a jury, and proven beyond a reasonable doubt). Relevant here, "a jury in a federal criminal case cannot convict unless it unanimously finds that the Government has proved each element." *Richardson v. United States*, 526 U.S. 813, 817 (1999). However, "a federal jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime." *Id.* Thus, the United States Supreme Court has drawn a distinction between the legal elements of a crime and the factual means by which a defendant may commit that crime. *See Mathis v. United States*, 579 U.S. 500, 514–15 (2016) (affirming, in a categorical approach case, the elements-means distinction in the Court's caselaw). In *Rendon v. Holder*, we recognized the well-established status of the means-elements distinction and concluded that it "parallels the need for juror agreement." 764 F.3d 1077, 1086 (9th Cir. 2014) ("[T]he Supreme Court regards *elements* as those circumstances on which the jury must unanimously agree, while it regards *means* as those circumstances on which the jury may disagree yet still convict.").

Thus, the question in this case is: Are the listed alternatives in the forced labor statute *elements* or *means*? We hold that the listed alternatives of 18 U.S.C. § 1589(a) are factual means, rather than distinct legal elements. The district court therefore did not abuse its discretion when it denied the defendants' proposed specific unanimity instruction.

We begin with the statute's text. "When called on to interpret a statute, this Court generally seeks to discern and apply the ordinary meaning of its terms at the time of their adoption." *BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1537 (2021). The forced labor statute reads:

> (a) Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following **means**–
>> (1) by **means** of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
>> (2) by **means** of serious harm or threats of serious harm to that person or another person;
>> (3) by **means** of the abuse or threatened abuse of law or legal process; or
>> (4) by **means** of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint,
>
> shall be punished as provided under subsection (d).

18 U.S.C. § 1589(a) (emphasis added). By its own terms, the forced labor statute indicates that the listed alternatives are *means* by which a defendant might commit forced labor. The word "means" is used five times in 18 U.S.C. § 1589(a)—once before referring to each of the four alternatives and once when describing that a person obtains forced labor by "any one of, or by any combination of" such means.

In addition to the plain language, the Supreme Court has identified certain aspects of a statute's structure that inform whether a statute describes means or elements. *See Mathis*, 579 U.S. at 518. If statutory alternatives carry different punishments or if the statute identifies which alternatives must be charged, then the alternatives must be elements. *Id*. Accordingly, in *United States v. Mickey*, we held that the sex trafficking statute lists alternative factual means rather than legal elements in part because the alternatives do not carry different punishments and the statute does not identify each alternative as an element of the crime. 897 F.3d 1173, 1181–82 (9th Cir. 2018). Similarly here, the forced labor statute's alternatives do not carry different punishments and the statute does not identify each alternative as an element of the crime. *See* 18 U.S.C. § 1589(d).

Moreover, the sex trafficking statute in *Mickey* uses substantially similar language for its alternatives as the forced labor statute here. The sex trafficking statute in *Mickey* prohibits sex trafficking "by means of force, threats of force, fraud, or coercion described in subsection (e)(2), or by any combination of such means." 18 U.S.C. § 1591(b)(1). "Coercion" includes:

> (A) threats of serious harm to or physical restraint against any person;
> (B) any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or
> (C) the abuse or threatened abuse of law or the legal process."

18 U.S.C. § 1591(e)(2). This language is nearly identical to the language used in the forced labor statute. Both statutes prohibit "force," "threats of force," "threats of serious harm," "threats of physical restraint," "any scheme, plan, or pattern intended to cause a person to believe that [failure to provide forced labor or perform a commercial sex act] would result in serious harm to or physical restraint against any person," and "the abuse or threatened abuse of law or legal process." *Compare* 18 U.S.C. § 1589(a), *with* 18 U.S.C. § 1591(b)(1), (e)(2). "We . . . avoid interpretations that would 'attribute different meanings to the same phrase.'" *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507, 1512 (2019) (quoting *Reno v. Bossier Par. Sch. Bd.*, 528 U.S. 320, 329 (2000)). Because in *Mickey* we found nearly identical language to be means rather than elements, we read the forced labor statute in the same way.

This is especially true because the sex trafficking statute is part of the broader context for the forced labor statute. Indeed, both statutes were added to Title 18 at the same time through the Trafficking Victims Protection Act of 2000, and for the same general purpose—to combat the modern-day strategies by which traffickers exercise power over their victims. *See* Pub. L. No. 106-386, § 102(a), (b)(13), 114 Stat. 1464, 1464 (2000). "When statutes 'were enacted at

the same time and form part of the same Act, the duty to harmonize them is particularly acute.'" *United States v. Gallenardo*, 579 F.3d 1076, 1083 (9th Cir. 2009) (quoting *US W. Commc'ns, Inc. v. Hamilton*, 224 F.3d 1049, 1053 (9th Cir. 2000), *as amended on reh'g* (Sept. 13, 2000)); *see also Erlenbaugh v. United States*, 409 U.S. 239, 243 (1972) ("[A] legislative body generally uses a particular word with a consistent meaning in a given context."). Thus, the plain text of the forced labor statute, the context in which the language is used, and the broader context of the statute as a whole counsel toward a finding that the forced labor statute's alternatives are factual means, rather than legal elements. *See United States v. Havelock*, 664 F.3d 1284, 1289 (9th Cir. 2012) (en banc) ("Statutory interpretation focuses on 'the language itself, the specific context in which the language is used, and the broader context of the statute as a whole.'" (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997))).

We must also consider whether construing the listed alternatives as means "aggravates the dangers of unfairness." *Richardson*, 526 U.S. at 819. In *Richardson*, the Supreme Court looked to the breadth and divergence of listed alternatives when considering whether a statute lists alternative factual means or legal elements. The Court concluded that individual "violations" are not means for purposes of 21 U.S.C. § 848(c)'s "series of violations" language because the statute's "breadth aggravates the dangers of unfairness." *Id.* The Court noted that "violations" covered approximately ninety numbered sections of drug crimes, which ranged from "removing drug labels" to "endangering human life while manufacturing a controlled substance in violation of the drug laws." *Id.* By comparison, the forced labor statute's set of alternatives is

far narrower, and we do not find that the breadth or divergence of these alternatives is so significant that they might aggravate any potential danger of unfairness to defendants should the alternatives be treated as factual means.  Each of the paragraphs describes a type of coercion, and each alternative is used to effectuate the same purpose: the acquisition of forced labor.  As noted above, we have already held that a substantially similar list describes alternative means, rather than elements.  Therefore, we conclude that the listed alternatives in the forced labor statute are simply different means by which a person may commit the same crime rather than "multiple, alternative *elements* of functionally separate crimes."[4]  *Rendon*, 764 F.3d at 1085.

Kartan argues that the forced labor statute's paragraphs must be elements because certain alternatives incorporate additional scienter requirements.  His argument is based on the conclusions by our court and the Seventh Circuit that "scheme . . . intended to cause a person to believe" and "in order to exert pressure" incorporate scienter into the alternatives at § 1589(a)(3) and (a)(4).  *See United States v. Calimlim*, 538 F.3d 706, 711 (7th Cir. 2008) (holding that § 1589(a)(4) contains a "second *scienter* requirement"

---

[4] This conclusion is consistent with how we and the Fifth Circuit have treated the forced labor statute's paragraphs.  *See Martinez-Rodriguez v. Giles*, 31 F.4th 1139, 1150 (9th Cir. 2022) ("Because Plaintiffs pleaded only a single forced-labor cause of action in their operative complaint, the district court's dismissal of that claim was erroneous if Plaintiffs presented sufficient evidence to establish that Defendants engaged *in any one of these three means* with the requisite *mens rea*." (emphasis added)); *United States v. Toure*, 965 F.3d 393, 400 (5th Cir. 2020) (treating the prohibited means listed in § 1589(a) as a single element of a forced labor offense).

because it requires a "scheme . . . intended to cause a person to believe . . ."); *see also Martinez-Rodriguez*, 31 F.4th at 1157 (noting that § 1589(a)(3) "already incorporate[s] an element of scienter inasmuch as 'abuse . . . of law or legal process' requires a showing that" the defendant did so "*in order to exert pressure*" on the victims).

We are not persuaded. We acknowledge that mens rea is an element of a crime, rather than a means. *See Elonis v. United States*, 575 U.S. 723, 734 (2015) ("[T]he 'general rule' is that a guilty mind is a 'necessary element in the indictment and proof of every crime.'" (quoting *United States v. Balint*, 258 U.S. 250, 251 (1922))). In this case, the forced labor statute expressly defines the mens rea element: "knowingly." 18 U.S.C. § 1589(a). By contrast, we have previously identified the incorporated scienter in the forced labor statute to be part of the actus reus element of the offense. *See Martinez-Rodriguez*, 31 F.4th at 1150, 1157 (noting that "the *actus reus* . . . incorporate[s] an element of scienter"). "[T]he jury need not agree as to mere means of satisfying the *actus reus* element of an offense." *Schad v. Arizona*, 501 U.S. 624, 632 (1991) (plurality opinion). Thus, because the incorporated scienter is part of the actus reus of a forced labor offense, the fact that some listed alternatives incorporate scienter does not undermine our conclusion that the alternatives are means.

Furthermore, Kartan's interpretation would be at odds with fundamental rules of statutory interpretation because it would require us to read the forced labor statute and the sex trafficking statute inconsistently. *See Cochise Consultancy*, 139 S. Ct. at 1512. The phrases that integrate a secondary scienter requirement into certain alternatives of the forced labor statute (i.e. "intended to cause a person to believe" and "in order to exert pressure") are also used in the sex

trafficking statute.  *Compare* 18 U.S.C. § 1589(a)(4), (c)(1), *with* 18 U.S.C. § 1591(e)(1), (e)(2)(B).  If we were to conclude that these phrases required us to hold that the forced labor statute's alternatives are legal elements, then our holding would be directly at odds with *Mickey*.  *See* 897 F.3d at 1181.  We decline to read the two statutes, which were enacted at the same time, as part of the same Act, and with substantially similar language, as conflicting.  *See Gallenardo*, 579 F.3d at 1083.  Thus, the jury did not need to be unanimous on the means by which Barai and Kartan obtained forced labor.

We conclude that the general unanimity instruction was sufficient.  All that was required for the jurors to convict Barai and Kartan under the forced labor statute was for the jurors to unanimously agree that Barai and Kartan knowingly obtained forced labor by one or more of the prohibited means listed in 18 U.S.C. § 1589(a).  The district court did not abuse its discretion in declining to give a specific unanimity instruction to the jury.

**AFFIRMED.**