**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

ABRAHAN GARCIA-MORALES,
AKA Abraham Garcia-
Morales,
*Defendant-Appellant.*

Nos. 17-50323
17-50324

D.C. Nos.
3:16-cr-01611-CAB-1
3:14-cr-02586-CAB-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Cathy Ann Bencivengo, District Judge, Presiding

Argued and Submitted December 7, 2018
Pasadena, California

Filed October 31, 2019

Before: Johnnie B. Rawlinson and Carlos T. Bea, Circuit
Judges, and Benjamin H. Settle,* District Judge.

Opinion by Judge Settle;
Dissent by Judge Bea

---

* The Honorable Benjamin H. Settle, United States District Judge
for the Western District of Washington, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed a conviction for attempted transport of aliens in a case in which the defendant alleged that the prosecution committed misconduct at trial by introducing evidence of, and commenting on, the defendant's post-arrest silence in violation of due process under *Doyle v. Ohio*, 426 U.S. 610 (1976).

Upon review of the record, the panel concluded that the defendant was not silent in response to a border patrol agent's questioning on the topic of his co-conspirators – and that, at most, the exchange demonstrated that the defendant did not want to discuss his co-conspirators on video tape but was willing to continue talking about the subject later. The panel wrote that the prosecution's characterization of the defendant as being evasive about other people involved in alien smuggling was supported by, and tied to, evidence in the record. The panel concluded that the prosecution therefore did not err, or commit misconduct, by characterizing the defendant as being evasive about the other people involved in alien smuggling, but properly relied on admissible evidence to rebut the theory that the defendant had always intended to turn aliens he picked up over to border patrol.

Dissenting, Judge Bea wrote that it cannot be that the defendant's refusal to name his co-conspirators was not

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

silence, and that this determination allowed the prosecution at trial to characterize his non-silence as silence for purposes of proving his guilt. Judge Bea wrote that the prosecution's reference to the defendant's silence as evidence of his guilt in this context was a *Doyle* violation, and plain error that warrants reversal and remand for further proceedings.

## COUNSEL

Sarah R. Weinman (argued), Federal Defenders of San Diego Inc., San Diego, California, for Defendant-Appellant.

Daniel Earl Zipp (argued) and Ajay Krishnamurthy, Assistant United States Attorneys; Helen H. Hong, Chief, Appellate Section, Criminal Division; United States Attorney's Office, San Diego, California; for Plaintiff-Appellee.

## OPINION

SETTLE, District Judge:

Defendant Abrahan Garcia-Morales ("Garcia") appeals his conviction for attempted transport of aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). Garcia alleges that the prosecution committed misconduct by introducing evidence of, and commenting on, his post-arrest silence at trial.[1] Because Garcia did not object to the prosecutor's statements

---

[1] Garcia also appeals the district court's finding that border patrol agents had reasonable suspicion to detain his vehicle. In a separate memorandum disposition filed simultaneously with this opinion, we affirm the conviction on that basis as well.

at trial, this Court reviews his prosecutorial misconduct claim for plain error. *United States v. Sanchez*, 176 F.3d 1214, 1218 (9th Cir. 1999). We may reverse under this standard if: "(1) there was error; (2) it was plain; (3) it affected the defendant's substantial rights; and (4) 'viewed in the context of the entire trial, the impropriety seriously affected the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Alcantara-Castillo*, 788 F.3d 1186, 1191 (9th Cir. 2015) (quoting *United States v. Combs*, 379 F.3d 564, 568 (9th Cir. 2004)). The defendant bears the burden to establish plain error. *Combs*, 379 F.3d at 568 (quoting *United States v. Geston*, 299 F.3d 1130, 1134–35 (9th Cir. 2002)). We affirm.

Shortly after Garcia left Calzada de la Fuente, a street abutting the Otay Mountain Wilderness Area just north of the U.S.-Mexican border, border patrol agents arrested him on suspicion of alien smuggling. Three aliens thought to be waiting for transportation from the area had been apprehended by border patrol agents about thirty minutes before Garcia arrived. When he was arrested, Garcia told agents he would have turned any aliens he picked up over to border patrol. This statement formed the basis for his theory of defense at trial: that he lacked the requisite mens rea to transport aliens.

The prosecution introduced video clips of Garcia's interrogation at trial. Although he received a *Miranda* warning and waived his right to remain silent in response to that warning, Garcia alleges that he later selectively invoked the right to silence on the topic of his co-conspirators.

Video of the interrogation shows Garcia admitting, *inter alia*, to a past attempt to transport aliens and to having been offered a job transporting aliens by a smuggler that morning. However, he maintained that he had driven to Calzada de la

Fuente on the day of his arrest simply to scope out the area, in contrast to border patrol agents' belief that he had been sent a dispatch asking him to pick up the three aliens by a smuggling contact.

One of many video clips of the interrogation introduced by the prosecution during the testimony of Border Patrol Agent Kahl showed Agent Kahl asking Garcia to name his smuggling contacts. In response, Garcia stated that he was not "feeling cool with that camera." Agent Kahl asked Garcia to "give him a name," with Garcia responding, "I don't . . ." while trailing off and shaking his head "no" once. Before Agent Kahl moved on to another topic, he told Garcia: "alright well, well later on I'll turn off the camera and you can tell me." Garcia nodded his head "yes" twice in response. The exchange lasted approximately forty-five seconds. Garcia continued answering questions for the remainder of the interrogation.

During closing argument, the prosecution summarized the evidence against Garcia, focusing primarily on contradictions between Garcia's actions and the statements he made at arrest and during post-arrest interrogation. To demonstrate one such contradiction, the prosecution argued that Garcia's "evasiveness" about the other people involved showed that he was not going to cooperate with border patrol, as he had stated at arrest. Because Garcia argues that he selectively invoked the right to silence on the topic of his co-conspirators, he contends that the prosecution's eliciting of testimony and argument about this topic was improper and asks us to remand for a new trial.

Because the Fifth Amendment's self-incrimination clause carries an implicit guarantee that silence will carry no penalty, a prosecutor violates due process by eliciting testimony about a suspect's silence. *Doyle v. Ohio*, 426 U.S.

610, 617–19 (1976). This is because a suspect's "silence in the wake of" *Miranda* warnings "may be nothing more than the arrestee's exercise of" his or her *Miranda* rights. *Id.* at 617. Silence does not mean only muteness; it includes the statement of a desire to remain silent, as well as of a desire to remain silent until an attorney has been consulted. *Wainwright v. Greenfield*, 474 U.S. 284, 294 n.13 (1986). However, when a suspect invokes his Fifth Amendment right to cut off police questioning on a specific topic, he must do so "unambiguously." *Berghuis v. Thompkins*, 560 U.S. 370, 381–82 (2010) (citing *Davis v. United States*, 512 U.S. 452, 459 (1994)). Even so, a suspect who remains silent in response to certain questions may still claim protection under *Doyle* even if his silence falls short of the unambiguous declaration required to invoke the right to counsel under *Davis* or the right to cut off questioning under *Thompkins*. *Hurd v. Terhune*, 619 F.3d 1080, 1087 (9th Cir. 2010).

Upon review of the record, we conclude that Garcia was not silent in response to Agent Kahl's questioning on the topic of his co-conspirators. This conclusion is driven by the fact that the exchange between Agent Kahl and Garcia began with Garcia voicing discomfort with video recording and concluded with Garcia agreeing to speak about his co-conspirators. At most, the exchange demonstrated that Garcia did not want to discuss his co-conspirators on video tape but was willing to continue talking about the subject later. On the fact-specific record before us, that brief exchange does not amount to the invocation of silence under either standard articulated above.

Moreover, because we have determined that Garcia did not selectively invoke his right to silence, we also conclude that it was not error for the prosecution to introduce evidence

of, and comment on, that part of the interrogation including argument characterizing Garcia as being evasive about other people involved in smuggling. While we acknowledge that characterizing a suspect as evasive is likely to invade the realm of improper demeanor testimony in some cases, our determination that Garcia was not silent dictates the conclusion that the characterization was proper in the context of this case. Additionally, the characterization was supported by the evidence in the record. For example, the prosecution elicited testimony at trial showing that Garcia had deleted certain phone records prior to his arrest. Referencing this fact and Garcia's reluctance to discuss his co-conspirators, the prosecution discussed Garcia's evasiveness as follows:

> The phone evidence we just talked about and the post-arrest statement you just saw where he's evasive about other people who are involved. This is not someone who is trying to cooperate, oh, I was trying to help you guys. I was going to call them. I wasn't going to transport them. I was going to pick them up and then call border patrol and say I've got people. Then why are you being so evasive? If you're trying to help, why are you being evasive, and why did you delete all the phone calls that would be able to help? Right?

Further, Agent Kahl testified that Garcia did not provide any actual information about his co-conspirators after the recording stopped, although Garcia did try to engage in negotiations to avoid going to jail. The prosecution referred to Agent Kahl's testimony during closing argument as follows:

Why does he want the recording turned off? Well, was it because he was going to provide fantastic information if they just turned the thing off? Well, you heard the testimony. Agent Kahl said, if you want to, we will turn it off, and you can tell me. In fact, he had an opportunity later. He wanted to make a deal. He didn't want to be on record being a snitch, and he wanted to make a deal. That's the reason why. It wasn't because he had a plan the entire time to turn these people over.

Because the prosecution tied its arguments characterizing Garcia as evasive to the evidence and given our holding that Garcia was not silent, the prosecution did not commit misconduct by characterizing him as being evasive about the other people involved in alien smuggling. Rather, the prosecution properly relied on admissible evidence to rebut the theory that Garcia had always intended to turn aliens he picked up over to border patrol.

The outcome of this appeal is controlled by our determination on the silence issue because, absent a conclusion that Garcia was silent, he cannot demonstrate error. Appellate courts may consider reversal if a defendant meets the first three elements of the plain error standard. However, even then, the court should not exercise its discretion to reverse unless the error also "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)). Here, having determined that Garcia was not silent on the topic of his co-conspirators, we must similarly conclude that he has failed to establish the existence of error

related to the prosecution's introduction of evidence on that topic. Without a showing of error, Garcia fails to meet the requirements for reversal of his conviction because he must also demonstrate that any alleged errors were plain, impacted his substantial rights, and so seriously affected the fairness and integrity of his trial that reversal is required. *Puckett*, 556 U.S. at 135. This is a showing Garcia has not made. Therefore, we affirm.

**AFFIRMED.**

---

BEA, Circuit Judge, dissenting:

As the majority recognizes, the Fifth Amendment's self-incrimination clause carries an implicit guarantee that a suspect's silence during a custodial interrogation will carry no penalty. *Doyle v. Ohio*, 426 U.S. 610, 617 (1976). It is therefore a due process violation for a prosecutor to elicit testimony or comment about such silence at trial. *Id.* Put another way:

> "When a person under arrest is informed, as *Miranda* requires, that he may remain silent, that anything he says may be used against him, and that he may have an attorney if he wishes . . . it does not comport with due process to permit the prosecution during the trial to call attention to his silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn . . . ."

*Id.* at 619.  Because that is exactly what the prosecution did in this case, I respectfully dissent.

At Garcia's trial, the prosecution played a video clip of Garcia's post-arrest interrogation.  In the video, Border Patrol Agent Kahl asked Garcia to identify his alien smuggling co-conspirators.  Although Garcia had already answered a number of questions up to this point in the video-recorded interrogation, he refused to discuss his co-conspirators, stating "I ain't feeling cool with that camera." Agent Kahl pressed harder, asking "why don't you just give me a name?"  Garcia shook his head nervously, sighed heavily, and started to say "I don't . . . ."  Agent Kahl interrupted Garcia to remind him that if he did not name his co-conspirators, he alone would take the fall for the crime of alien smuggling.  Garcia shook his head timidly, bit his nails, and once again stated: "I don't feel cool with the camera . . . ."  Agent Kahl again cut him off, this time stating: "Okay, if you want, alright, well, later on we'll turn off the camera and you can tell me."  Garcia sheepishly nodded his head in agreement.  Agent Kahl then moved on to another topic, and Garcia continued answering questions on camera. Despite suggesting that he might talk about his co-conspirators off camera, Garcia later refused to name his co-conspirators during subsequent off-camera discussions with Border Patrol agents.  At trial, the prosecution elicited direct testimony from Agent Kahl in its case-in-chief about Garcia's refusal to identify his co-conspirators.  Later, the prosecution argued in its closing statement that Garcia must be guilty because he was "evasive about other people who are involved," asking "Why does he want the recording turned off? . . . It wasn't because he had a plan the entire time to turn these people over."  This is *exactly* the type of penalty for exercising one's Fifth Amendment rights that *Doyle* prohibits.  426 U.S. at 617–18.

The majority states that "Garcia was not silent in response to Agent Kahl's questioning on the topic of his co-conspirators," and that therefore no *Doyle* error occurred. Maj. Op. at 6. The majority holds that a defendant's repeated refusal to answer a specific question during an interrogation does not count as "silence" under *Doyle* if the refusal is accompanied by a suggestion that the defendant might be willing to answer the question at another time, or under different circumstances, even if he never follows through. The majority cites no authority for this novel holding. Indeed, it is well-established in this Circuit that a suspect may "refuse to be interviewed in a particular manner even if he has already waived that right with respect to the subject matter of the interrogation." *Hurd v. Terhune*, 619 F.3d 1080, 1088 (9th Cir. 2010).[1]

It makes no difference that Garcia intimated that he might be willing to answer questions about his co-conspirators at another time (which ultimately never happened), because such an "explanatory refusal" to answer

---

[1] In *Hurd*, the Ninth Circuit held that it was error to allow the prosecution to introduce at the defendant's state-court murder trial his steadfast refusal to answer interrogation questions in a particular manner. *Id.* at 1088–89. The defendant in *Hurd* argued that he shot his wife by accident, and at trial the prosecution played a tape of the defendant's interrogation, wherein he refused repeatedly to reenact physically how the alleged accident occurred. *Id.* at 1082. He was subsequently convicted of murder. *Id.* The California Court of Appeal affirmed his conviction, holding that the prosecution's use at trial of his refusal to reenact the shooting was proper under *Doyle*. *People v. Hurd*, 62 Cal. App. 4th 1084, 1090 (1998). On habeas review, the Ninth Circuit held that "[t]he California Court of Appeal's . . . *Doyle* analysis [was] incorrect," because "[a] suspect may remain selectively silent by answering some questions and then refusing to answer others without taking the risk that his silence may be used against him at trial." 618 F.3d at 1087.

is treated the same as silence for Fifth Amendment purposes. *See U.S. v. Gomez*, 725 F.3d 1121, 1127 (9th Cir. 2013) ("[W]hen the prosecution attempts to use a defendant's 'explanatory refusal' in its case-in-chief, as affirmative evidence of guilt . . . the Fifth Amendment bars the introduction of the explanation just as it bars the introduction of the silence."). Disagreeing with the majority's conclusion that "Garcia was not silent," Maj. Op. at 6, the prosecution characterized Garcia's explanatory refusal as silence—arguing that it showed his evasiveness on the issue of his co-conspirators, which implied his guilt. It cannot be that Garcia's refusal to name his co-conspirators *was not silence*, and that this determination allowed the prosecution at trial to characterize his non-silence *as silence* for purposes of proving his guilt (that would amount to prosecutorial misconduct by misstating the evidence).[2]   *See Hurd*, 619 F.3d at 1089 ("[N]either the Constitution nor *Miranda* require a suspect to invoke his right to silence in a particular way. They simply mandate that once a suspect has invoked that right, he cannot be punished for it."). The prosecution's reference to Garcia's silence as evidence of his guilt in this context was a *Doyle* violation, plain and simple.

Because Garcia did not object to the use of his silence by the prosecution at trial, the plain error standard applies, and we may reverse Garcia's conviction only if: (1) there was error; (2) it was plain; (3) it affected the defendant's

---

[2] I note also that it does not matter that Garcia's explanatory refusal was not so unambiguous as to require Agent Kahl to cut off questioning on the subject of Garcia's co-conspirators pursuant to *Berghuis v. Thompkins*, 560 U.S. 370 (2010), and *Miranda v. Arizona*, 384 U.S. 436 (1966), given the "fundamental principle that a suspect's silence in the face of questioning cannot be used as evidence against him at trial, whether that silence would constitute a valid invocation of the 'right to cut off questioning' or not." *Hurd*, 619 F.3d at 1088.

substantial rights; and (4) the impropriety seriously affected the fairness, integrity, or public reputation of judicial proceedings when viewed in the context of the trial as a whole. *United States v. Alcantara-Castillo*, 788 F.3d 1186, 1190–91 (9th Cir. 2015). The prosecution's flagrant and repeated use of Garcia's post-arrest silence against him at trial to prove his guilt satisfies all four plain-error prongs. As described above, the prosecution's use of Garcia's silence was a clear constitutional violation under *Doyle*—satisfying the first two plain-error prongs. As for the third plain-error prong, the violation affected Garcia's substantial rights because the prosecution's use of his silence was critical to defeating Garcia's sole defense theory: that he lacked the *mens rea* to commit alien smuggling because he intended to turn the smuggled aliens and his co-conspirators over to Border Patrol officials. Indeed, Garcia's *mens rea* was the only disputed element at trial, and the evidence the prosecution put forward to establish his *mens rea* other than his post-arrest silence was both thin and circumstantial. The fourth plain-error prong is satisfied because, as the Supreme Court has noted, it is "fundamentally unfair" to allow a criminal defendant's silence to be used against him at trial, given his constitutional privilege against self-incrimination. *Doyle*, 426 U.S. at 618. Such a violation necessarily implicates the integrity and public reputation of federal criminal proceedings, because it impacts whether future arrestees can rely on pre-interrogation promises that they have the right to remain silent, and the implicit guarantee that exercising that right will carry no penalty at trial.

Because the prosecution's use of Garcia's post-arrest silence against him at trial was plainly erroneous, I would reverse Garcia's conviction and remand for further proceedings.