NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAY 8 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 19-10373 |
| Plaintiff-Appellee, | D.C. No. |
| v. | 4:14-cr-02097-JAS-JR-1 |
| CARLOS CANTIZANO, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Arizona
James Alan Soto, District Judge, Presiding

Submitted April 19, 2023**
Phoenix, Arizona

Before: TALLMAN, OWENS, and BADE, Circuit Judges.

Carlos Cantizano appeals from his jury conviction and sentence for one
count of distribution of child pornography (Count 1) and one count of possession
of child pornography (Count 2). We have jurisdiction pursuant to 28 U.S.C.
§ 1291. As the parties are familiar with the facts, we do not recount them here.

_____

* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

** The panel unanimously concludes this case is suitable for decision
without oral argument. See Fed. R. App. P. 34(a)(2).

We affirm.

1.      **Rule 404(b) Violation.**  Cantizano argues that the district court erred by admitting Exhibit 83—a list of child pornography files found on Cantizano's seized laptop—because the government did not provide notice as required by Federal Rule of Evidence 404(b).  We review de novo whether evidence is "other act" evidence under Rule 404(b).  *United States v. Carpenter*, 923 F.3d 1172, 1180-81 (9th Cir. 2019).  "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b).  However, we have "exempted other act evidence from the requirements of Rule 404 where it is 'inextricably intertwined' with the underlying offense."  *Carpenter*, 923 F.3d at 1181 (citation omitted).

Here, Exhibit 83 was inextricably intertwined with Cantizano's Count 2 possession charge and therefore exempt from Rule 404(b).  Although the indictment listed only six child pornography files, the remaining files listed on Exhibit 83 became "other acts simply because [Cantizano was] indicted for less than all of his actions."  *United States v. Anderson*, 741 F.3d 938, 949 (9th Cir. 2013) (citation omitted).  Accordingly, the district court properly admitted Exhibit 83.

2.      **Prosecutorial Misstatements.**  For the first time on appeal,

2

Cantizano argues that the prosecution misstated evidence in its closing arguments. We review whether any prosecutorial misconduct occurred de novo and, if the defendant failed to object, the effect of any misconduct for plain error. *United States v. Flores*, 802 F.3d 1028, 1034 (9th Cir. 2015).

"A prosecuting attorney may not misstate or manipulate the evidence at trial." *United States v. Preston*, 873 F.3d 829, 844 (9th Cir. 2017). At the same time, prosecutors "are free in argument to suggest that the jury draw reasonable inferences from the evidence presented at trial." *Flores*, 802 F.3d at 1035. Because Cantizano did not raise these objections at trial, he bears the burden of showing "(1) there was error; (2) it was plain; (3) it affected [his] substantial rights; and (4) viewed in the context of the entire trial, the impropriety seriously affected the fairness, integrity, or public reputation of judicial proceedings." *United States v. Garcia-Morales*, 942 F.3d 474, 475 (9th Cir. 2019) (internal quotation marks and citation omitted).

First, Cantizano argues that the prosecutor misrepresented Exhibit 83 by stating that the document showed "the dates in which those files were created on this computer." But even if the prosecution technically mischaracterized the agent's testimony on how to interpret a "created" date for a computer file, Cantizano provides no specific arguments that this error "affected [his] substantial rights" and that "the impropriety seriously affected the fairness, integrity, or public

3

reputation of judicial proceedings." *Id*. Thus, any mischaracterization did not amount to plain error.

Second, Cantizano argues that the prosecutor mischaracterized the evidence by stating that "hundreds of . . . videos dating all the way back to 2011" were "downloaded and accessed for over a 15-month period" and that Cantizano accessed child pornography files on certain dates. These were not misstatements. For example, Exhibit 83 listed about 230 files, the first of which was "created" on May 3, 2011. Thus, the jury could reasonably infer that there were "hundreds of . . . videos dating all the way back to 2011." The record also shows that the files were last written, or last modified, between May 2011 and August 2012. As the government argues, it was therefore "reasonable to infer that if a file was modified, it was accessed" during that period. Although Cantizano argues that the prosecution erroneously claimed that the dates came from Exhibit 50, or the "jump list," any error is not plainly evident given the ambiguity of the prosecutor's statement.

3.    **Discovery Violation.** Cantizano argues that the prosecution violated its discovery obligations with its last-minute disclosure of Exhibit 50. We determine whether the government violated its discovery obligations de novo. *United States v. Obagi*, 965 F.3d 993, 997 (9th Cir. 2020). "To reverse a conviction for a discovery violation, we must find not only that the district court

4

abused its discretion, but that the error resulted in prejudice to substantial rights." *United States v. Amlani*, 111 F.3d 705, 712 (9th Cir. 1997) (citation omitted).

Assuming, without deciding, that the government violated its discovery obligations, Cantizano cannot show that the late disclosure of Exhibit 50 prejudiced a substantial right. Exhibit 50's significance was limited because the government only used it to refresh a witness's recollection. More importantly, the government disclosed the data on the laptop from which Exhibit 50 was created. The disclosure included information that one of the files had been accessed on August 1, 2012—a fact that Cantizano argues "completely exonerate[s]" him because he was "not in Arizona and had no access to the laptop" on that date. Because Cantizano had access to this purportedly significant piece of evidence well before trial, there was no discovery violation that prejudiced his substantial rights.

4. **Hearsay and Confrontation Clause Violation.** Cantizano also argues that admission of an agent's testimony regarding his conversation with a non-testifying witness violated Rule 801(c)'s prohibition against hearsay statements and the Confrontation Clause. We review the admission of evidence under a hearsay exception for abuse of discretion and alleged violations of the Confrontation Clause raised for the first time on appeal, as here, for plain error. *United States v. Johnson*, 875 F.3d 1265, 1278 (9th Cir. 2017).

5

Here, the agent's testimony was not hearsay because it was admitted for a legitimate non-hearsay purpose: to show the statement's effect on the agents who were conducting the search and to explain why they focused their investigation on Cantizano. *See United States v. Audette*, 923 F.3d 1227, 1238 (9th Cir. 2019) (holding that a statement was not offered for its truth because it showed why the government focused on the defendant as a suspect); Fed. R. Evid. 801(c). And because the non-testifying witness's statement did not constitute testimonial hearsay, there was no Confrontation Clause violation. *See Johnson*, 875 F.3d at 1278.

Even if the non-testifying witness's statements were inadmissible, any error was harmless. *See United States v. Shayota*, 934 F.3d 1049, 1052 (9th Cir. 2019). Contrary to Cantizano's assertion, the admitted testimony did not resolve "the contested issue of which computer actually belonged to [him], or whether another person was the primary user." At trial, the prosecution presented significant evidence that the laptop belonged to Cantizano. *See Johnson*, 875 F.3d at 1279 (finding harmless error in the court's admission of a non-testifying witness's statement that a gun belonged to the defendant because additional evidence linked the defendant to the gun). Nor did the government rely on the non-testifying witness's statement at closing argument. *See id.* (noting that, in another case, "the prosecution's reliance on out-of-court statements during closing arguments

6

indicated that the statements were intended for a hearsay purpose"). We therefore find that any error was harmless.

5. **Jury Instructions and Constructive Amendment.** Cantizano contends that the district court constructively amended Count 1 of his indictment. The jury instructions used at trial asked the jurors to find, as part of the "distribution" element, that "the defendant *knowingly transported or shipped* a visual depiction in interstate commerce by any means, including a computer." As the government concedes, the first element should have asked the jurors to find that "the defendant *knowingly distributed* a visual depiction *that had been shipped or transported* in interstate commerce by any means, including a computer."

As a threshold matter, the parties dispute whether we should interpret this argument as a claim of constructive amendment or as a challenge to the jury instructions. But we need not resolve this issue because Cantizano failed to object in the district court, and he cannot show plain error regardless of how the claim is framed. *See United States v. Mickey*, 897 F.3d 1173, 1183 (9th Cir. 2018); *United States v. Conti*, 804 F.3d 977, 981 (9th Cir. 2015).

Under plain error review, Cantizano cannot show that the error "seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Mickey*, 897 F.3d at 1183. The evidence presented at Cantizano's trial proved the "distribution" element overwhelmingly and beyond a reasonable doubt: (1)

Cantizano maintained child pornography in a shared folder; (2) he knew that doing so would allow others to download the files, and (3) federal agents were able to download four files depicting child pornography from Cantizano's computer. *See Johnson v. United States*, 520 U.S. 461, 469-70 (1997) (holding that, although the jury instructions omitted an element, the defendant could not show plain error because the evidence supporting that element was overwhelming); *United States v. Budziak*, 697 F.3d 1105, 1109 (9th Cir. 2012) (outlining the elements for a distribution conviction under 18 U.S.C. § 2252(a)(2)).

6.    **Denial of Post-Trial Motions.**  Cantizano further contends that the district court abused its discretion by denying his pro se motion for a new trial, motion for reconsideration, and motion for a *Franks* hearing.  We review the denial of motions for a new trial and reconsideration for an abuse of discretion and the denial of a *Franks* hearing de novo.  *United States v. King*, 660 F.3d 1071, 1076 (9th Cir. 2011) (motion for a new trial); *United States v. Tapia-Marquez*, 361 F.3d 535, 537 (9th Cir. 2004) (motion for reconsideration); *United States v. Norris*, 942 F.3d 902, 907 (9th Cir. 2019) (*Franks* hearing).

The district court did not abuse its discretion by denying Cantizano's motions for a new trial and reconsideration.  Cantizano's motions, which focused primarily on the government's last-minute disclosure of Exhibit 50, failed to meet his burden of showing that this was an "exceptional case[] in which the evidence

8

preponderates heavily against the verdict." *United States v. Rush*, 749 F.2d 1369, 1371 (9th Cir. 1984) (citation omitted). As already discussed, any prejudicial effect of Exhibit 50 was minimal given that it was used only to refresh an agent's recollection, and the government disclosed all the data on Exhibit 50 well before trial.

Nor did the district court err by denying Cantizano's post-trial motion for a *Franks* hearing.[1] Although the *Franks* motion relied on a few different inconsistencies, it focused primarily on purported inconsistencies between the search warrant affidavit and Exhibit 83. However, the record shows that these two documents are not actually inconsistent. The remaining inconsistencies rely on speculation regarding the method by which investigators previously flagged Cantizano for attempting to obtain child pornography files and an error regarding the name of a file-sharing software. Relying on these two bases alone, Cantizano failed to make a "substantial preliminary showing that . . . the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant." *United States v. Nault*, 41 F.4th 1073, 1081 (9th Cir. 2022) (internal quotation marks and citation omitted).

---

[1] Because the government does not substantially challenge Cantizano's post-trial *Franks* motion for its untimeliness, *see* Fed. R. Crim. P. 12(b)(3), we assume, without deciding, that he made the requisite showing of "good cause" to bring his motion post-trial and proceed to the merits. Fed. R. Crim. P. 12(c)(3).

7.    **Restitution Award.**  Cantizano contends that the district court clearly erred by awarding restitution to "Tara" because, in doing so, it relied on two pieces of unreliable hearsay: (1) an unsworn National Center for Missing and Exploited Children ("NCMEC") document, and (2) an agent's testimony at the sentencing hearing.  We review the factual findings supporting a restitution order for clear error.  *United States v. Gagarin*, 950 F.3d 596, 607 (9th Cir. 2020).

"Hearsay is generally admissible in sentencing hearings, as neither the Confrontation Clause nor the Federal Rules of Evidence apply to such hearings." *United States v. Franklin*, 18 F.4th 1105, 1114 (9th Cir. 2021).  However, "due process requires that some minimal indicia of reliability accompany a hearsay statement introduced at sentencing."  *Id.* (cleaned up).

Contrary to Cantizano's argument, the district court did not clearly err by finding that the NCMEC report and the agent's testimony had "some minimal indicia of reliability."  *Id.*  The NCMEC report reliably described the process by which it identified "Tara" as a victim.  The agent also testified that he had over fifteen years of experience working on child pornography cases and was able to describe NCMEC's process for identifying victims.  He also personally confirmed, prior to the sentencing hearing, that Cantizano's laptop contained the two "Tara" files listed in the NCMEC report.  Because Cantizano fails to show that the evidence was false or unreliable, we hold that the district court did not err in

10

awarding restitution to "Tara."

8. **Conditions of Supervised Release**. Cantizano also challenges ten supervised release conditions. We review supervised release conditions to which a defendant objected at sentencing (Special Conditions 6, 9, 12, 14, and 15) for abuse of discretion, and those challenged for the first time on appeal (Special Condition 5 and Standard Conditions 4, 5, 9, and 12) for plain error. *United States v. Gibson*, 998 F.3d 415, 418 (9th Cir. 2021); *United States v. Magdaleno*, 43 F.4th 1215, 1221 (9th Cir. 2022). We review whether a supervised release condition violates the Constitution de novo. *United States v. Ochoa*, 932 F.3d 866, 868 (9th Cir. 2019).

According to the written judgment, Special Condition 6 prohibits Cantizano from possessing, viewing, or using "material depicting sexually explicitly conduct as defined in 18 U.S.C. [§] 2256(2) and materials depicting sexually explicit conduct involving adults, defined as explicitly sexually stimulating depictions of adult sexual conduct that are deemed inappropriate" by the probation officer. But based on the district court's oral pronouncement of the condition at the initial sentencing hearing and its reference to our decision in *United States v. Gnirke*, 775 F.3d 1155, 1166 (9th Cir. 2015), at the final sentencing hearing, Special Condition 6 should read to prohibit "material[s] depicting sexually explicit conduct *involving children*," as defined in 18 U.S.C. § 2256(2), and "materials depicting sexually

11

explicit conduct involving adults." Accordingly, we construe the condition to include the omitted "involving children" language consistent with the special condition in *Gnirke*. *See id.* (narrowly construing a special condition on appeal to bring it "in line with what the district court clearly intended"). Under this construction, Special Condition 6 is permissible. *See id.* Although Cantizano cites *United States v. Cope* to argue that the condition impermissibly proscribes possession of materials necessary for a collateral attack or court-mandated treatment, *Cope* is inapposite because it involved a condition that prohibited materials "depicting and/or *describing* child pornography." 527 F.3d 944, 957 (9th Cir. 2008) (emphasis added). By contrast, nothing in Special Condition 6 prohibits Cantizano from possessing the types of materials discussed in *Cope*.

Notwithstanding the clerical omission in Special Condition 6, the district court did not otherwise abuse its discretion by imposing the conditions to which Cantizano objected. Cantizano's procedural arguments fail because, even assuming that the conditions implicate a "particularly significant liberty interest," the district court provided adequate justification by explaining its reasoning at sentencing and by adopting the Presentence Investigation Report. *Gnirke*, 775 F.3d at 1160.

12

Cantizano's substantive arguments as to Special Conditions 9, 12, 14, and 15 also fail.[2] Based on the underlying crime and specific facts of this case, the conditions do not involve "a greater deprivation on his liberty than required to achieve deterrence, public protection, and rehabilitation." *Gibson*, 998 F.3d at 420 (citation omitted). The conditions are also a limited ban and permit the prohibited conduct with prior written permission, thereby suggesting they are "no more restrictive than necessary." *United States v. Wells*, 29 F.4th 580, 592 (9th Cir. 2022). Furthermore, we have upheld analogous conditions against similar substantive challenges in child pornography cases. *See United States v. Stoterau*, 524 F.3d 988, 1009-10 (9th Cir. 2008) (affirming a condition similar to Special Condition 9); *United States v. Riley*, 576 F.3d 1046, 1049 n.3 (9th Cir. 2009) (finding conditions similar to Special Conditions 12 and 14 valid); *United States v. Blinkinsop*, 606 F.3d 1110, 1122-23 (9th Cir. 2010) (upholding a similar condition to Special Condition 15, albeit under plain error review). And contrary to Canitzano's contention, supervised release conditions "are not required to be related to the offense of conviction; instead, they *can anticipate* crimes that a defendant convicted of a child-pornography crime might commit in the future." *Blinkinsop*, 606 F.3d at 1122-23 (internal quotation marks and citation omitted).

---

[2] Cantizano's as-applied challenge to Special Condition 12 is moot because his nephews are no longer minors.

As to the unobjected conditions, the district court did not plainly err. Cantizano's challenge to Special Condition 5 fails because we have upheld even more restrictive conditions against similar challenges in child pornography and exploitation cases. *See United States v. Rearden*, 349 F.3d 608, 620-21 (9th Cir. 2003) (upholding a near-total Internet ban under plain error review). Nor does he cite controlling authority in support of his contention that Special Condition 5 is unconstitutionally vague and overbroad. *See Gnirke*, 775 F.3d at 1164 ("An error cannot be plain where there is no controlling authority on point and where the most closely analogous precedent leads to conflicting results." (internal quotation marks and citation omitted)). Because he also does not provide controlling case law in support of his challenges to Standard Conditions 4, 5, 9, and 12, we similarly reject those. *See id.*

9.      *Napue* **Challenge.**  Finally, Cantizano argues that the government violated his Due Process rights by presenting false statements in violation of *Napue v. Illinois*, 360 U.S. 264, 269 (1959).  We review *Napue* claims de novo. *Dow v. Virga*, 729 F.3d 1041, 1049 (9th Cir. 2013).  To show a *Napue* violation, a defendant must demonstrate that (1) "the testimony (or evidence) was actually false," (2) the government "knew or should have known that the testimony was actually false," and (3) "the false testimony was material." *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (citation omitted).

14

Cantizano's claims fail under the first prong. Contrary to his claim that Exhibit 44 was "fabricated," the government properly characterized Exhibit 44 as a recreation of Cantizano's file-sharing program. The fact that Exhibit 44 was not an exact replica of the actual file-sharing program fails to show that the testimony or evidence was fabricated, and the remainder of Cantizano's arguments regarding Exhibit 44 are highly speculative. Cantizano's contention that the agent's testimony was false based on some minor inconsistencies is equally unconvincing. Although the cited inconsistencies could raise questions about the agent's credibility, they do not show that he fabricated his testimony or that the government knew or should have known of its purported falsity. *See United States v. Houston*, 648 F.3d 806, 814 (9th Cir. 2011). Because Cantizano cannot show that the government presented false statements, his *Napue* claims fail.

**AFFIRMED.**